793 A.2d 82 (2002)
349 N.J.Super 133
James VACCARO and Karen Vaccaro, Plaintiffs-Appellants/Cross-Respondents,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2002.
Decided March 13, 2002.
Steven L. Kessel, Red Bank, argued the cause for appellants/cross-respondents *83 (Drazin & Warshaw, attorneys; Mr. Kessel, on the brief).
Diana La Femina Rosa, Chatham, argued the cause for respondent/cross-appellant (Maloof, Lebowitz, Connahan & Oleske, attorneys; Ms. La Femina Rosa, on the brief).
Before Judges HAVEY, BRAITHWAITE and WEISSBARD.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Plaintiffs James and Karen Vaccaro were injured in an automobile accident and obtained a default judgment in the total amount of $305,710.62 as a result of a proof hearing in the action they filed against the uninsured, unrepresented, and non-appearing tortfeasor. When defendant Pennsylvania National Mutual Casualty Insurance Company, plaintiffs' insurer, refused to pay plaintiffs' judgment under the uninsured/underinsured motorist provision of their policy, plaintiffs instituted a declaratory judgment action against defendant. Defendant claimed that it was not liable to plaintiffs because they had failed to give it sufficient notice of the claim.
On cross-motions for summary judgment, the judge granted summary judgment to plaintiffs, finding that defendant received notice of plaintiffs' claim. The judgment was stayed for sixty days, however, so that defendant could conduct discovery on the issue of whether the tortfeasor was truly uninsured.
Defendant filed a motion for reconsideration. Although the motion judge reaffirmed her earlier determination that defendant had received notice of plaintiffs' claim, she reversed the summary judgment order with respect to damages because no one had represented defendant's interests at the proof hearing and, therefore, the damages award would have to be arbitrated pursuant to plaintiffs' policy with defendant.
Plaintiffs appeal the order that requires the issue of damages to be arbitrated. They assert that defendant is bound by the default judgment for damages because it declined to intervene in the underlying tort action after receiving notice. Defendant cross-appeals from the order finding that it had notice of plaintiffs' claim. It argues that plaintiffs did not provide adequate notice and if they did, the default judgment for damages is not binding and the matter should proceed to arbitration. We reject plaintiffs' contentions and affirm the order requiring the issue of plaintiffs' damages to be submitted to arbitration. We also reject defendant's notice argument and affirm the order finding that defendant received notice of plaintiffs' claim.

I
On June 1, 1996, plaintiff James Vaccaro was driving a car along Ocean Avenue in Belmar. His wife, plaintiff Karen Vaccaro, was a passenger. At the same time, Miguel Arenas was driving a car owned by Alica Gaticaseguel[1] along River Road in Belmar. At some point, the car driven by Arenas struck the Vaccaro car. Plaintiffs' car was insured by defendant. Gaticaseguel's car was insured by Liberty Mutual Insurance Company ("Liberty Mutual").
On July 3, 1996, plaintiffs filed a complaint against Arenas and Gaticaseguel in the Law Division, Monmouth County, seeking compensatory damages (Vaccaro v. Arenas action). Gaticaseguel filed an answer to the complaint, denying liability, *84 and asserting a counterclaim for contribution and indemnity against plaintiffs.
On June 2, 1997, plaintiffs' counsel wrote a letter to defendant, which informed it that plaintiffs had been in an accident on June 1, 1996; that they were insured by defendant; that they had filed a lawsuit against the owner and the operator of the other car; and that the owner's insurance company, Liberty Mutual, had denied coverage. The letter also stated that Gaticaseguel had filed a motion for summary judgment, asserting lack of agency, and that plaintiffs had moved for substituted service on Liberty Mutual because Arenas could not be served. The letter advised that both motions were returnable on June 13, 1997. The letter concluded:
Because of the denial of coverage by Liberty Mutual, the tortfeasor's car may be uninsured. I am making a claim for Uninsured Motorist benefits on behalf of both James and Karen Vaccaro for personal injuries sustained in this accident, contingent on whether Liberty Mutual has validly disclaimed coverage. You are invited to participate in the liability action.
Defendant received the letter on June 4, 1997. On September 16, 1997, defendant, through its claims representative, Arlene L. Gonzalez, acknowledged notice of plaintiffs' UM claim, although Gonzalez and plaintiffs' counsel had been in telephone contact at least a month earlier.
On January 12, 1998, plaintiffs requested the entry of default against Liberty Mutual in the Vaccaro v. Arenas action based upon its failure to answer the complaint in that matter. Liberty Mutual was required to file an answer because plaintiffs had obtained a court order permitting substituted service upon Arenas, who could not be located, through Liberty Mutual. Liberty Mutual had been served pursuant to the order for substituted service. A default against Liberty Mutual was entered. On May 14, 1999, the default against Liberty Mutual was vacated and a default against Arenas was entered. The same order provided that a proof hearing would be scheduled subsequently.
At some point in 1998, Gaticaseguel filed a declaratory judgment action against Liberty Mutual and plaintiffs (Gaticaseguel v. Liberty Mutual action). Gaticaseguel alleged in her complaint that Arenas was not authorized to drive her car at the time of the accident and that Liberty Mutual had refused to meet her demand to defend and indemnify her in the Vaccaro v. Arenas action.
On August 12, 1999, a proof hearing was held in the Vaccaro v. Arenas action. Prior to the hearing, plaintiffs' counsel provided notice of the hearing to Liberty Mutual. No notice of the proof hearing was provided to defendant. Following the uncontested proof hearing, judgment was entered in the amount of $305,710.62 in favor of plaintiffs and against Arenas.
On September 8, 1999, plaintiffs' counsel wrote defendant's representative, Gonzalez, and reminded her that, "[a]bout two years ago," he had placed defendant on notice about plaintiffs'"potential uninsured motorist claim." Counsel said that because the default judgment against "the tortfeasor" exceeded the coverage under Liberty Mutual's policy, he was asserting a claim for underinsured motorist benefits on behalf of plaintiffs. Further, counsel stated his intention to proceed with arbitration of the claim immediately.
On January 24, 2000, plaintiffs' counsel again wrote to Gonzalez and reminded her of the default judgment entered against "the tortfeasor." Counsel informed Gonzalez that Gaticasequel had filed a declaratory judgment action against Liberty Mutual, that trial had been scheduled for *85 March 6, 2000, and that summary judgment motions filed by plaintiffs, Gaticaseguel and Liberty Mutual were returnable the Friday before trial. Again, counsel invited defendant "to participate." Counsel's letter concluded:
The outcome of the declaratory judgment action will determine whether the Vaccaro's claim is for UM or UIM benefits. I understand that the tort feasor's policy limit is only $35,000.00 which is only a fraction of the default judgment entered against the tort feasor. Therefore, a claim against the Penn National policy has been made regardless of the outcome of the declaratory judgment action. I note this for your benefit because I have not received a response to my previous letter requesting your position on Arbitration.
In addition, in the Gaticaseguel v. Liberty Mutual action, plaintiffs filed a motion for leave to file a third-party complaint against defendant. Leave was granted, but there is no indication in the record that the complaint was ever filed.
Subsequently, on March 3, 2000, plaintiffs' motion for summary judgment in the Gaticaseguel v. Liberty Mutual action was denied. Gaticaseguel's motion for summary judgment was granted. The judge declared that as of the date of plaintiffs' accident "Liberty Mutual had not effectively canceled [Gaticaseguel's] automobile insurance policy" and, therefore, she was entitled to a defense in the Vaccaro v. Arenas action. The judge also granted Liberty Mutual's cross-motion for summary judgment against plaintiffs, declaring that they were not "entitled to benefits under the Gaticaseguel automobile insurance policy." The effect of this latter ruling was that Arenas was uninsured on June 1, 1996, the date of the accident.
Two days later, on March 5, 2000, plaintiffs commenced this action seeking a judgment against defendant in the amount of $305,710.62, pursuant to the uninsured motorist provision of plaintiffs' policy with defendant. This represented the total amount of the default judgment against Arenas. Defendant filed an answer denying liability and asserting various defenses, including plaintiffs' failure to comply with the terms of the policy.
Thereafter, plaintiffs moved for summary judgment, relying on Zirger v. General Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996), to support their claim that the default judgment entered against Arenas was binding on defendant and therefore defendant was obligated to satisfy the judgment. Defendant cross-moved to dismiss plaintiffs' complaint, asserting that plaintiffs had failed to provide notice of the Vaccaro v. Arenas action or the Gaticaseguel v. Liberty Mutual action. It argued that the failure of notice did not give it any opportunity to be heard and defend "the underlying claim."
The motion judge granted plaintiffs' motion, concluding that defendant had received notice of plaintiffs' claim. Defendant's cross-motion was denied. The judge, however, allowed a sixty-day discovery period to determine whether Arenas was truly uninsured. The judgment, in favor of plaintiffs, was stayed for the discovery period.
Defendant moved for reconsideration. The motion judge reaffirmed her earlier decision with respect to notice, but concluded that the issue of "the appropriate amount of damages ... should be done in an arbitration." This appeal and cross-appeal followed.

II
We are satisfied that plaintiffs provided adequate notice to defendant of both the Vaccaro v. Arenas and Gaticaseguel v. *86 Liberty Mutual actions that would have allowed defendant to move to intervene. Plaintiffs' counsel's letter of June 2, 1997, advised defendant that: (1) plaintiffs had been injured in an accident on June 1, 1996; (2) they had filed a lawsuit against the tortfeasors; (3) the tortfeasor was insured by Liberty Mutual; (4) plaintiffs may make a claim against defendant for UM benefits; and (5) Defendant was "invited to participate in the liability action." Defendant declined to intervene.
Furthermore, plaintiffs', by their attorney's letter of January 24, 2000, advised defendant of the Gaticaseguel v. Liberty Mutual action, the declaratory judgment suit. Although plaintiffs' notice to defendant could have been provided much sooner, plaintiffs' counsel advised defendant of the status of the case, the fact that motions for summary judgment were pending, and again invited defendant to participate. Again, defendant declined to intervene or take steps to "participate" in this proceeding.
Defendant's contention that the motion judge must have confused the June 2, 1997, letter with the January 24, 2000, letter is disingenuous, at best. The first letter clearly stated that plaintiffs had been injured in an automobile accident on June 1, 1996; that they had filed the Vaccaro v. Arenas action; that Gaticaseguel's car "may be uninsured" as the result of Liberty Mutual's denial of coverage; and that counsel was "making a claim for Uninsured Motorist benefits on behalf of both James and Karen Vaccaro for personal injuries sustained in this accident, contingent on whether Liberty Mutual has validly disclaimed coverage" (emphasis added). The letter concluded by "invit[ing] [defendant] to participate in the liability action." Thus, we conclude, as did the motion judge, that counsel's June 2, 1997, letter was a sufficiently definitive notice that plaintiffs were making a claim against defendant for uninsured motorist benefits.

III
We now address plaintiffs' appeal of the order that requires the parties to arbitrate plaintiffs' damages. Plaintiffs contend that the motion judge committed reversible error when she reconsidered her initial ruling to enter judgment against defendant on the default judgment granted to plaintiffs as a result of the proof hearing and determined that the issue of plaintiffs' damages had to be decided in arbitration. According to plaintiffs, Zirger required defendant to intervene in the Vaccaro v. Arenas action, and its failure to do so, after having been placed on notice of the action, rendered it bound by the default judgment entered against Arenas. Plaintiffs argue that the motion judge erred when she ruled that Zirger did not apply to default judgments because no one with interests similar to those of defendant had appeared at the proof hearing. They assert that because the issue of their damage was resolved by the proof hearing, defendant cannot relitigate this issue in arbitration. They contend that if defendant desired to contest the amount of damages, it should have intervened.
Plaintiffs assert that Zirger expressly holds that an insurer, which has declined the opportunity to intervene in an underlying tort action, is barred from enforcing the standard arbitration clause in the UM/UIM endorsement of its insurance policy. They argue that "to broadly exempt default judgments from the holding of Zirger creates a loophole that our Supreme Court never intended and rewards insurance carriers for doing exactly what the Supreme Court did not want them to do, that is, ignore the liability action in favor of a subsequent arbitration."
*87 The arbitration clause here is a "standard arbitration clause widely used in the industry." Zirger, supra, 144 N.J. at 330, 676 A.2d 1065. In Zirger, supra, 144 N.J. at 332, 676 A.2d 1065, our Supreme Court addressed the issue of whether a plaintiff, who had tried to conclusion his or her claim against a tortfeasor and received an award of damages in the Law Division, could nevertheless be forced to relitigate the damages issue before an arbitration panel pursuant to the arbitration clause in the UM/UIM endorsement of his or her automobile liability insurance policy. There, the plaintiff sustained personal injuries in an accident involving an automobile driven by Joseph Filsaime. Id. at 330, 676 A.2d 1065. Although Filsaime's liability policy afforded only $15,000 in coverage, the plaintiff's policy with the defendant General Accident Insurance Company (GA) provided $1 million in underinsured motorist (UIM) coverage. Ibid. The UIM endorsement, however, contained an arbitration clause and did not bind GA to "[a]ny judgment for damages arising out of a `suit' brought without [GA's] written consent." Id. at 331, 676 A.2d 1065.
After the plaintiff had instituted a negligence action against Filsaime, his counsel informed GA about the limit of liability on Filsaime's policy, and asked GA's permission to settle for the policy limits so that he could pursue a UIM claim under his policy with GA. Id. at 331, 676 A.2d 1065. In addition, counsel demanded arbitration pursuant to the UIM endorsement of the GA policy. Ibid.
Both sides chose arbitrators, and a few months later, GA consented to the plaintiff's settlement of his claim against Filsaime for the policy limits. Ibid. However, the settlement never took place. Ibid. After a jury found Filsaime liable for the plaintiff's injuries, Filsaime's carrier offered to settle the case for the $15,000 policy limit. Ibid. The plaintiff's counsel called GA's counsel and said that he was inclined to reject the offer and proceed to trial on damages. Ibid.
Although counsel for GA said that the matter could proceed to trial on damages, he claimed that he never waived GA's contractual right to arbitration. Ibid. Counsel further asserted that GA was not authorized to preclude the plaintiff from proceeding to trial on damages, and, therefore, counsel's "informal authorization" was of "no significance." Id. at 331-32, 676 A.2d 1065.
The plaintiff was awarded $400,000 in damages by the jury. Id. at 332, 676 A.2d 1065. He then demanded payment of that amount, less the $15,000, from GA. Ibid. GA refused, and the plaintiff instituted a declaratory judgment action. Ibid. On cross-motions for summary judgment, the judge concluded that GA had waived its contractual right to arbitration by impliedly consenting to the litigation between the plaintiff and Filsaime and granted summary judgment to the plaintiff. Ibid. On appeal, we reversed. Ibid. We concluded that GA had not waived its right to arbitration because its consent to the litigation "was not sufficiently unequivocal and decisive." Ibid. Moreover, we said that GA "could not be collaterally estopped from relitigating the damages question because its interests and Filsaime's were not sufficiently similar to conclude that Filsaime's litigation of the damages claim provided adequate representation of [GA]'s interest in minimizing its ultimate liability under the UIM endorsement." Ibid. Our Supreme Court disagreed and reversed. Id. at 344, 676 A.2d 1065.
Applying principles of collateral estoppel, the Court expressly held "that a UM/UIM carrier that intervened in the underlying tort litigation, or declined to exercise its opportunity to intervene, is barred *88 from enforcing the standard arbitration clause in the UM/UIM endorsement." Id. at 342, 676 A.2d 1065. Although the Court recognized that its holding "may constitute a modification of the usual requirements for privity," the Court was nevertheless "convinced that the UM/UIM carrier's interests can be protected adequately in the underlying action and that the common interests of the UM/UIM carrier and the tortfeasor's carrier effectively serve the purposes of the privity requirement." Ibid.
Further, the court went on to say:
We invalidate the contractual arbitration clause only to the extent that it requires an arbitration proceeding that duplicates the underlying litigation of the tort claim. For example, if the underlying tort claim does not result in an adjudication of damages, as is often the case, the arbitration clause in the UM/UIM policy will be given full force and effect.

[Id. at 343, 676 A.2d 1065.]
Essentially, Zirger was concerned with the "avoidance of redundant litigation." Id. at 335, 676 A.2d 1065. In other words, if the UM/UIM carrier is put on notice of the underlying tort claim that is fully litigated with the tortfeasor, the UM/UIM carrier acts at its peril when it declines to intervene. We are satisfied that Zirger contemplates a contested damages trial to bind the UM/UIM carrier. An uncontested proof hearing that fixes damages is not the equivalent of an adjudication of damages so as to invalidate the contractual arbitration clause. To bind the UM/UIM carrier, there must be notice to the carrier and an adversarial proceeding that determines damages.
We find support for our conclusion in the language from the opinion of the Nevada Supreme Court in Allstate Ins. Co. v. Pietrosh, 85 Nev. 310, 454 P.2d 106 (1969), cited with approval in Zirger. The Nevada Supreme Court observed that invalidating the arbitration clause and binding the carrier to the damage judgment after trial was appropriate when the carrier had been notified of the litigation. The Nevada Court went on to observe that enforcement of the arbitration clause `may be appropriate in a case where the insured secures a default judgment against the uninsured motorist, since an adversary determination of liability and damages is absent.'" Zirger, supra, 144 N.J. at 336, 676 A.2d 1065 (quoting Allstate Ins. Co. v. Pietrosh, supra, 454 P.2d at 110-11). Here, because plaintiffs' damages were fixed at a proof hearing, resulting from Arenas' default, the arbitration clause in the policy is valid and plaintiffs must arbitrate the issue of their damages.
Finally, at oral argument, defendant argued that had it intervened in this default proceeding, it would have invoked its arbitration clause and the issue of plaintiffs' damages would have been decided in that forum and not at a proof hearing. We cannot disagree with defendant's position because the policy allows either party to "demand" arbitration when there is a disagreement as to whether plaintiffs are entitled to damages or the amount of plaintiffs' damages is in dispute. Moreover, the arbitration clause allows both sides to select an arbitrator, with the two arbitrators selecting the third member of the arbitration panel. Arbitration, therefore, allows the parties to partially select who will decide the issues, something that is unavailable in a court.
Because of the default, there was no tortfeasor to cause an adjudication of damages that renders any subsequent relitigation of plaintiffs' damages in an arbitration proceeding unnecessary. In other words, there is not the "anomaly of the use of arbitration as a supplement to an adjudication in court." Zirger, supra, 144 N.J. *89 at 342, 676 A.2d 1065. Here, the arbitration is a substitute for the litigation of damages, because no real litigation of that issue occurred in the trial court. Ibid.
Affirmed.
NOTES
[1] Alica Gaticaseguel's surname in the record is also spelled Gaticasequel and Gaticasecuel.