838 A.2d 514 (2004)
365 N.J. Super. 153
Carol H. WYLIE, Plaintiff-Respondent,
v.
Christopher T. HAMILTON, Defendant, and
CNA Insurance Company, Appellant-Intervenor.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 2003.
Decided January 6, 2004.
Stacy L. Moore, Jr., Marlton, argued the cause for appellant-intervenor (Parker, McCay & Criscuolo, attorneys; Mr. Moore, of counsel and on the brief).
Michael A. Kaplan, Cherry Hill, argued the cause for respondent (Jarve, Kaplan & Reagan, attorneys; Mr. Kaplan, of counsel and on the brief).
Before Judges HAVEY, NEWMAN and FALL.
The opinion of the court was delivered by NEWMAN, J.A.D.
This appeal addresses whether an underinsured motorist carrier (UIM) who intervenes in the action between its insured and the other party to the accident, conducts discovery, and fully participates in the automobile arbitration proceeding, yet fails to file a de novo appeal following the arbitration after having consented to its insured's settlement with the other driver, is subject to the judgment where the insured has moved for confirmation of *515 the arbitration award. The UIM carrier contends that it still could avail itself of the arbitration clause contained in the contract of insurance. We disagree and hold that the contract arbitration clause is unenforceable under Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996). The judgment entered as a result of the confirmation award is, therefore, valid and enforceable since the UIM carrier fully participated as a party to the previous arbitration.
The facts which are not in dispute may be summarized as follows. Plaintiff, Carol Wylie, was in an auto accident with an auto driven by defendant, Christopher Hamilton, on November 4, 1998. Plaintiff was idling in traffic on the Tacony Palmyra Bridge in Palmyra when defendant rear-ended her with his vehicle. According to defendant, while traveling behind plaintiff, traffic came to a sudden stop and despite applying his brakes, he was unable to stop in time to avoid an accident with her. As a result of being hit by defendant, plaintiff then struck the vehicle in front of her.
At the time of the accident, Hamilton maintained auto insurance through American Independent Insurance Company with split policy limits of $15,000/$30,000 and $5000 in property damage. Plaintiff maintained auto insurance through defendant CNA Insurance Company (CNA) with UM/UIM limits of $100,000. By letter dated December 3, 1998, plaintiff notified CNA of her intention to file a UIM claim since her injuries exceeded Hamilton's minimum insurance coverage. On October 10, 2000, plaintiff filed suit against Hamilton in the Law Division, Burlington County. CNA filed a motion to intervene in the suit pursuant to Rule 4:33-1, which was granted on April 27, 2001.
On January 25, 2002, plaintiff's motion for partial summary judgment on the issue of liability was granted. CNA submitted its own set of interrogatories to plaintiff, took plaintiff's deposition, served subpoenas for plaintiff's medical and employment records, and had plaintiff examined by an orthopedist. On May 1, 2002, Wylie, Hamilton, and CNA attended mandatory, non-binding arbitration pursuant to Rule 4:21A-1 to -6. The arbitrator attributed 100% liability to Hamilton and entered an award in favor of plaintiff for $118,000. After obtaining consent from CNA, plaintiff settled with Hamilton for his policy limit of $15,000.
CNA did not move under Rule 4:21-6 to reject the award and demand a trial de novo within thirty days after filing of the arbitration award. When CNA failed to file for a trial de novo, plaintiff moved to confirm the arbitration award as to CNA pursuant to Rule 4:21A-6(a)(3).
Opposing the motion, CNA argued it was unnecessary to file for a trial de novo since CNA was not a defendant in the action, and the next appropriate step for the UIM claim was arbitration in accordance with the contract of insurance. Assignment Judge Sweeney ruled that CNA as an intervenor was bound to the arbitration award under the holding of Zirger, supra. Barred from enforcing the arbitration provision of the UIM policy, the court found Zirger required CNA to file for a trial de novo to protect its interests in the litigation. Not having done so, Judge Sweeney confirmed the arbitration award against CNA in the amount of $85,000, constituting the difference between the UIM policy limit of $100,000 and the $15,000 received from Hamilton.
On appeal, CNA raises the following issues for our consideration.
POINT I.
THE TRIAL COURT WAS IN ERROR WHEN IT ENTERED JUDGMENT AGAINST CNA INSURANCE *516 COMPANY BECAUSE THE INSURANCE CONTRACT BETWEEN THE PARTIES REQUIRES THAT THIS UIM CLAIM PROCEED TO MANDATORY ARBITRATION AND THIS MATTER IS NOT GOVERNED BY THE EXCEPTION TO REQUIRED UIM ARBITRATION SET FORTH IN ZIRGER V. GENERAL ACCIDENT INSURANCE COMPANY.

POINT II.
THE TRIAL COURT WAS IN ERROR WHEN IT ENTERED JUDGMENT AGAINST CNA INSURANCE COMPANY BECAUSE CNA INSURANCE COMPANY WAS NOT A NAMED DEFENDANT IN THIS LITIGATION RESULTING IN A JUDGMENT AGAINST DEFENDANT HAMILTON, AND R. 4:21A-1 ET SEQ. WAS CLEARLY NEVER INTENDED TO ENCOMPASS UM/UIM CARRIERS IN THAT SUPERIOR COURT ARBITRATION PROCEEDING.
POINT III.
THE TRIAL COURT WAS IN ERROR WHEN IT ENTERED JUDGMENT AGAINST CNA INSURANCE COMPANY BECAUSE AFTER PLAINTIFF SETTLED THE UNDERLYING LITIGATION CNA INSURANCE COMPANY COULD NOT PREVENT PLAINTIFF FROM ENFORCING THE MANDATORY UIM ARBITRATION PROVISION AGAINST CNA UNDER THE INSURANCE POLICY, AND SIMILARLY PLAINTIFF SHOULD NOT BE ABLE TO PREVENT CNA FROM ENFORCING THE UIM ARBITRATION PROVISION OF THE INSURANCE CONTRACT AGAINST PLAINTIFF.
I.
CNA argues in Points I and III that the trial court erred in refusing to allow it to proceed to UIM arbitration as spelled out in the insurance contract, instead determining it was bound under Zirger, supra, by the award made in the Superior Court arbitration. The thrust of CNA's argument is that the public policy concern in Zirger of avoiding repetitious litigation does not apply to the present case since no trial took place as it did in Zirger.
The starting point for discussion begins quite naturally with the Zirger opinion. Zirger involved an automobile collision between defendant Joseph Filsaime, who had minimum liability coverage of $15,000, and plaintiff Zirger who maintained UIM coverage of $1,000,000 issued through defendant General Accident Insurance Company (General Accident). Id. at 330, 676 A.2d 1065. The UIM contract contained a standard arbitration clause used in the industry. Ibid. Although General Accident granted plaintiff's request to settle with Filsaime for his policy limit of $15,000, the settlement was never finalized with the case instead proceeding to trial. Id. at 331, 676 A.2d 1065. A jury found Filsaime liable for plaintiff's injuries, awarding plaintiff $400,000. Id. at 331-32, 676 A.2d 1065. Plaintiff demanded $385,000 from General Accident, representing the jury verdict less Filsaime's policy limit of $15,000. Id. at 332, 676 A.2d 1065.
Zirger filed suit against General Accident after it refused to pay the claim. Ibid. The parties cross-moved for summary judgment. Ibid. The trial court granted Zirger's motion, concluding General Accident consented to the litigation of Zirger's claim against Filsaime and therefore waived its contractual right to arbitration. Ibid. This court reversed, determining General Accident's consent was not *517 sufficiently clear to constitute a waiver of its right to arbitrate. Ibid.
In reversing this court, our Supreme Court found the legislative goal of preventing unreasonable delay in payment of UIM claims precluded "an insurance policy provision that would require an insured to litigate to conclusion the issues of liability and damages in a personal-injury action against the tortfeasor, on notice to the UM/UIM carrier, only [to require the insured] to relitigate those same issues in an arbitration proceeding with the UM/UIM carrier...." Zirger, supra, 144 N.J. at 343-44, 676 A.2d 1065.
Recognizing that the language in the insurance contract should ordinarily govern UM/UIM disputes, the Court observed that mandatory availability of UM/UIM coverage in New Jersey reflects a strong public policy interest in insuring adequate compensation for injuries sustained by New Jersey motorists in accidents with uninsured motorists. Id. at 334, 676 A.2d 1065. Examining cases from sister states, the Court noted that courts in a significant number of states often refused to enforce standard arbitration clauses in UM/UIM contracts, especially where the insured has already litigated the damage claim against the tortfeasor. Id. at 335, 676 A.2d 1065.
Explaining the basis for its holding, the Supreme Court had this to say:
The advantages of arbitration evaporate when arbitration is used not as a substitute for litigation, but as a supplement to litigation. Used in that manner, a procedure designed to expedite dispute resolution is transformed into a mechanism for delaying and obstructing final resolution of disputes....
We invalidate the contractual arbitration clause only to the extent that it requires an arbitration proceeding that duplicates the underlying litigation of the tort claim. For example, if the underlying tort claim does not result in an adjudication of damages, as is often the case, the arbitration clause in the UM/UIM policy will be given full force and effect.
[Id. at 343, 676 A.2d 1065].
CNA argues the present case does not fall within the Zirger exception to the general rule that the insurance contract governs resolution of disputes arising over UM/UIM coverage. CNA urges us to read the holding in Zirger narrowly, prohibiting UM/UIM carriers' invocation of arbitration only in cases where a jury trial occurred on the issue of the tortfeasor's liability. Such an interpretation, according to CNA, is most consistent with the public policy concerns of the Zirger Court in avoiding duplicative litigation which delays an injured party's receipt of UM/UIM benefits. Since "an informal Superior Court arbitration proceeding before one attorney who is hearing numerous cases that day is simply not a Law Division trial," CNA claims that proceeding to UIM arbitration would not amount to supplemental litigation.
Plaintiff contends the facts in Zirger parallel those here. Plaintiff asserts that permitting CNA to proceed to UIM arbitration would be tantamount to giving UM/ UIM insurers "two bites at the apple" if, as here, CNA has fully participated in Superior Court arbitration. Plaintiff points out that this second arbitration will cause unnecessary delay in payment of UIM benefits to her for an accident which occurred more than five years ago.
The precise issue of whether the Zirger holding compels a court to bind a UM/ UIM carrier to an award made during a mandatory, non-binding Superior Court arbitration in which the carrier has fully participated has not been addressed by our courts. Other post-Zirger decisions of this *518 court shed illumination on the issue before us.
In Vaccaro v. Pa. Nat'l Mut. Cas. Ins. Co., 349 N.J.Super. 133, 144, 793 A.2d 82 (App.Div.), certif. denied, 174 N.J. 40, 803 A.2d 635 (2002), this court upheld a UM carrier's right to arbitrate where, unlike the trial which occurred in Zirger, the plaintiffs' damages had been determined in an uncontested proof hearing following the uninsured driver's default. The uncontested proof hearing resulted in a judgment in favor of plaintiffs for $305,710.62. Id. at 137, 793 A.2d 82. Plaintiffs' UM carrier, Pennsylvania National, never received notice of this hearing, and refused payment to the plaintiffs. Ibid.
Plaintiffs initiated suit against Pennsylvania National, alleging the default judgment entered against the uninsured motorist was binding on Pennsylvania National under Zirger since the insurance company had failed to intervene in the action. Id. at 140, 793 A.2d 82. Rejecting this argument, we commented as follows:
Essentially, Zirger was concerned with the `avoidance of redundant litigation'.... We are satisfied that Zirger contemplates a contested damages trial to bind the UM/UIM carrier. An uncontested proof hearing that fixes damages is not the equivalent of an adjudication of damages so as to invalidate the contractual arbitration clause. To bind the UM/UIM carrier, there must be notice to the carrier and an adversarial proceeding that determines damages.... Here, the arbitration is a substitute for the litigation of damages, because no real litigation of that issue occurred in the trial court.
[Id. at 143-44, 793 A.2d 82 (quoting Zirger, supra, 144 N.J. at 335, 676 A.2d 1065).]
Another relevant case is Habick v. Liberty Mut. Fire Ins. Co., 320 N.J.Super. 244, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999), which addressed issue preclusion resulting from a PIP arbitration. In Habick, the plaintiff allegedly suffered from TMJ and a right knee injury following a 1992 automobile accident with an uninsured motorist. Id. at 246, 727 A.2d 51. Her PIP carrier, defendant Liberty Mutual, paid for treatment of the TMJ and arthroscopic surgery for her knee, but refused to pay for a knee replacement. Ibid. Plaintiff consequently filed both for arbitration of her PIP claim and coverage under her UM/UIM policy. Ibid. The PIP arbitrator denied plaintiff's claim for additional TMJ treatment and for the knee replacement, finding neither treatment was necessary since plaintiff sustained only "minor soft tissue injuries" from the accident. Ibid.
Plaintiff then filed a complaint in the Law Division seeking to vacate the arbitration determination, or at least limit its scope to reflect that it was without prejudice to her UM/UIM claim. Id. at 247, 727 A.2d 51. We upheld the decision of the trial court denying relief to the plaintiff, holding the PIP arbitration barred relitigation of medical causation in plaintiff's anticipated UM claim since, consistent with Zirger, plaintiff had "a full opportunity to be heard in the prior proceeding." Id. at 255, 727 A.2d 51. We noted, however, that where a UM arbitration allocated partial fault to an insured driver who was unrepresented in the arbitration, the arbitration award could not bind the insured driver in a subsequent action. Ibid. (citing Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 498, 531 A.2d 717 (1987)). The "key factor" in according preclusive effect to an arbitration award is whether the party had "the opportunity once to be heard fully." Habick, supra, 320 N.J.Super. at 255, 727 A.2d 51.
Both Vaccaro and Habick recognize, as did Zirger, that a party's opportunity to *519 litigate an issue will bar relitigation of the same issue in a different forum. This is consistent with a key underpinning of Zirger of avoiding repetitious litigation and delays in a plaintiff's receipt of UM/UIM benefits. CNA argues that UIM arbitration would not be repetitious litigation here since the underlying tort action settled before proceeding to a jury trial and verdict. That argument sidesteps the issue. CNA consented to the settlement of the other driver's minimum policy limits after having had an opportunity to fully participate as a party.
CNA actively involved itself in the discovery process leading up to the arbitration. CNA then fully participated in the arbitration along with Wylie and Hamilton. CNA's role contrasts sharply with the facts of Vaccaro where the damages award was made at an uncontested proof hearing following the tortfeasor's default. Vaccaro, supra, 349 N.J.Super. at 137, 793 A.2d 82. Indeed, CNA already had been given the opportunity to be heard fully during the first arbitration. Habick, supra, 320 N.J.Super. at 255, 727 A.2d 51.
Although we were never provided with a copy of the UIM contract, it was represented at argument to be a standard contract widely used in the industry, containing an arbitration clause. A standard arbitration clause in UIM contracts such as the following have previously been the subject of dispute before this court:
If we [the insurer] and a covered person do not agree: (1)[w]hether that person is legally entitled to recover damages under this part [entitled Uninsured Motorists Coverage]; or (2)[a]s to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction ...
A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the insured is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of New Jersey. If the amount exceeds the limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.
[Duerlein v. N.J. Auto. Full Ins. Underwriting Ass'n, 261 N.J.Super. 634, 639, 619 A.2d 664 (App.Div.1993); Derfuss v. N.J. Mfrs. Ins. Co., 285 N.J.Super. 125, 128, 666 A.2d 599 (App.Div.1995).]
The UIM contract here presumably duplicates the above, as we were advised that the arbitration is binding only where the amount of the award is less than or equals the minimum limits of the tortfeasor's policy. If the award exceeds the minimum limits, either party to the arbitration could file for a de novo trial. Three bites of the apple is thus a realistic prospect: court sponsored arbitration, contract arbitration and a trial de novo. The legislative goal of eliminating unreasonable delays in payment of UM/UIM benefits would be stymied. CNA and plaintiff already participated in an adversarial proceeding which resulted in an adjudication of damages so as to invalidate the UIM arbitration clause under Zirger. Vaccaro, supra, 349 N.J.Super. at 143, 793 A.2d 82. CNA should not now be permitted to proceed to a second arbitration because it did not like the results of the first.

*520 II.

CNA argues the trial court improperly penalized it for failing to file for a trial de novo, because CNA was unable to do so since Rule 4:21A-1 to -6 does not encompass UM/UIM carriers. CNA first contends it was both unnecessary and impossible for it to file for a trial de novo because it had not filed an answer, was not a named defendant in the case, and was never given notice of the arbitration. CNA asserts that once plaintiff settled her claim with Hamilton, the case was "no longer under the jurisdiction of the court system" and the only proper avenue of relief for the UIM claim was arbitration. Second, CNA maintains that the court rules governing arbitration, specifically Rule 4:21A-1 to -6, were never intended to apply to UM/UIM contract claims but rather govern only the underlying tort action.
There is no basis for CNA's argument that it lacked standing as an intervenor to file for a trial de novo. CNA fails to cite a single case in support of its argument that the arbitration rules under Rule 4:21A-1 to -6 do not apply to UM/UIM carriers. To the contrary, CNA, as an intervenor, was a party to the case, fully participating in the discovery process and the Superior Court arbitration. Whether CNA was a "named defendant" is irrelevant; CNA, as plaintiff's UM/UIM carrier, had a right to intervene in the underlying tort action pursuant to the holding in Zirger, supra, 144 N.J. at 341, 676 A.2d 1065 (asserting "UM/ UIM carriers ordinarily may intervene in their insured's action against the third-party tortfeasor"). CNA fully participated in the proceeding and signed the arbitrator's award. The claim that it did not receive effective notice is therefore moot.
CNA's contention that the case was "no longer under the jurisdiction of the court system" following the settlement between plaintiff and defendant, and that the only proper avenue of relief for the UIM claim was arbitration, is likewise rejected. Rule 4:21A-6(b)(1) allows a party to an automobile negligence arbitration to reject the arbitration award within thirty days of its filing and demand a trial de novo. A trial de novo will then be held within ninety days of the request. R. 4:21A-6(c). CNA is a "party" to this action as an intervenor. The court rules explicitly provide a method of relief from the arbitration award which CNA, as a party to this action, could have followed. CNA did not lose its right to file for a trial de novo simply because plaintiff and defendant settled with CNA's consent. Simply stated, CNA cannot now argue the trial court lacked jurisdiction to conduct a trial de novo because CNA failed to file for one.
Affirmed.