889 A.2d 477 (2006)
382 N.J. Super. 399
Evelyn WINNER, Executrix of the Estate of Irving W. Winner, and Roger I. Winner, Plaintiffs-Respondents,
v.
Donald A. REVILL, John Does (1-15), J/S/A, Defendants, and
Agway Insurance Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 2005.
Decided January 25, 2006.
*478 William J. Pollinger, Hackensack, argued the cause for appellant.
Robert F. Rupinski argued the cause for respondents.
Before Judges FALL, PARKER and SAPP-PETERSON.
The opinion of the court was delivered by
SAPP-PETERSON, P.J. Cv. (temporarily assigned).
Defendant, Agway Insurance Company (AIC), appeals from the trial court's determination that under a policy of insurance issued to its insured, decedent Irving Winner, plaintiffs are entitled to underinsured motorist (UIM) coverage and are also entitled to have their UIM claim proceed through arbitration.[1]
The dispute stems from a March 8, 2000, motor vehicle accident. Winner was struck by a vehicle driven by Donald Revill as he walked across Woodlane Road in Westampton Township after retrieving mail from a mailbox located across the street from his home. Winner sustained massive injuries and died in the arms of his son, Roger Winner, while being prepared for transfer from an ambulance to a helicopter.
On June 11, 2001, Winner's widow and executrix of his estate, Evelyn Winner, filed a wrongful death and survivor action against Revill. The complaint was later amended on November 7, 2001, to include a Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980), claim on behalf of Roger Winner, who is alleged to have suffered severe emotional distress after observing his father's horrific injuries and witnessing the last moments of his life.
*479 At the time of the accident, Winner owned a farm named Sunnyside Dairies, Inc., which was insured by AIC. The policy included UIM coverage in the amount of $500,000 per incident. The UIM provision of the policy provides:
2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if a. or b. below applies:
a. The limit of any applicable liability bonds or policies have been exhausted by judgments or payments; or
b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:
(1) Have been given prompt written notice of such tentative settlement; and
(2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.
* * * * *
With respect to damages resulting from an "accident" involving an "underinsured motor vehicle", the Limit of Insurance shall be reduced by all sums paid by or for anyone who may be legally responsible, including all sums paid under this Coverage Form's Liability Coverage.
The policy also contained an arbitration clause for UIM disputes. Paragraph four states:
a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.
b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.
Pursuant to Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996), AIC was granted leave to intervene on January 11, 2002 in the underlying action. The parties exchanged discovery over the next eighteen months. On March 3, 2004, in accordance with Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988), plaintiffs notified AIC that Revill had extended a settlement offer in the amount of $30,000 and that plaintiffs intended to accept the offer. In addition, plaintiffs advised AIC the damages exceeded the $50,000 liability limit under Revill's insurance policy and that plaintiffs would therefore seek UIM benefits from AIC. In response, AIC advised plaintiffs that the settlement did not represent exhaustion of "all available liability insurance," AIC would not consent to the settlement, and the Superior Court was the proper forum to resolve all remaining liability and damages issues.
Plaintiffs filed a motion to compel AIC to participate in arbitration of the UIM *480 claim in accordance with the insurance policy. AIC cross-moved for a determination that there was no UIM coverage, or in the alternative, to declare that a UIM claim should proceed in Superior Court rather than in arbitration.
The motion judge granted plaintiffs' motion to compel arbitration and denied defendant's cross-motion in its entirety. In reaching his decision, the judge found the $30,000 settlement offer was "substantial, not modest, not insignificant and as substantial as the test given the Longworth modification of the word exhaust." The judge also concluded that since the proposed settlement would eliminate the sole tortfeasor, plaintiffs had a right to proceed to arbitration pursuant to the terms of the policy. Plaintiffs subsequently filed a stipulation of dismissal against Revill only.[2]
AIC contends a settlement of $30,000 on a $50,000 policy does not constitute exhaustion of all available liability coverage and is not "close to" the policy limits. AIC maintains there was no basis for the motion judge to find that UIM coverage applied. We respectfully disagree.
N.J.S.A. 17:28-1.1 provides in pertinent part:
A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds[.]
In Longworth, supra, we rejected the argument that an insured forfeits entitlement to UIM benefits if the insured settles for an amount less than the full policy limits. 223 N.J.Super. at 192, 538 A.2d 414. We stated:
The requirement that the insured obtain the tortfeasor's entire policy limits as a condition of prosecuting his right to UIM benefits is so antithetical to the policies underlying the statute that we are constrained to conclude that the Legislature could not have so intended. We thus construe the statute as intended only to limit the amount recoverable under the UIM coverage by requiring deduction of the tortfeasor's full available policy limit, whether or not that limit is actually paid to the victim.[3]
[Ibid.]
In Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995), the Supreme Court expressly approved the Longworth holding, finding that our reasoning "reflects a fair balance between the competing *481 interests of the parties involved." Id. at 172, 652 A.2d 162.
Before the motion judge, plaintiffs' counsel represented that the litigation costs and emotional toll upon his clients were reasons why they wanted to accept the settlement offer. Plaintiffs argued that these same considerations were considered reasonable in Ohio Cas. Ins. Co. v. Bornstein, 357 N.J.Super. 282, 814 A.2d 1170 (App.Div.2003). AIC maintained the Bornstein decision was distinguishable primarily because the policy language there, unlike the language contained in the Winner policy, did not require the insured to exhaust the limits of the tortfeasor's policy before seeking UIM coverage. Id. at 285, 814 A.2d 1170. AIC also argued that liability was not an issue in Bornstein, as distinguished from the present matter.
After considering the submissions and arguments of counsel, the motion judge reasoned that Longworth modified the word "exhaust" and the judge also found:
The three things that Bornstein is right on point with our case is in the emotional need to move forward. I think that's on both sides. And certainly the greater emotional need in a wrongful death case than in somebody ... alive and well enough to pursue a case. Additional cost ... certainly for witnesses, because if this case goes to arbitration, it will be decided based on reports, not on doctors and ... Mr. Rupinski [the plaintiffs' counsel] talks about ... [$]9,000 to $15,000 in costs. They certainly seem to be reasonable as projections. So that's the same here as in Bornstein.

In Bornstein, we affirmed the trial court decision rejecting the insurer's position that the insured's acceptance of sixty percent of the tortfeasor's liability policy limits was not a settlement at or near the policy limits, and therefore the plaintiff was precluded from obtaining UIM benefits. Id. at 286, 814 A.2d 1170. We concluded that although an insured does not have an "unfettered right to settle the underlying lawsuit for a modest or insignificant sum and pursue UIM benefits, the settlement amount was substantial when compared to the tortfeasor's policy and the plaintiff's reasons for accepting the settlement were reasonable." Id. at 287, 814 A.2d 1170.
Here, defendant contends plaintiffs' projected litigation costs and emotional needs of the parties are bare assertions without any support in the record. We disagree. In the answers to interrogatories, plaintiffs identified two potential experts, an economist and a liability expert. During oral argument, plaintiffs' counsel represented that the cost to produce the economist and liability expert for trial would range from $3,000 to $5,000 each. Additionally, counsel also projected that additional costs would be incurred if Winner's treating physicians were needed to rebut a potential defense claim that Winner had vision deficits at the time of the accident.[4] Plaintiffs' counsel further represented that Evelyn Winner, who was in her mid-seventies, and Roger Winner both expressed an interest in not having to go "through any more stress than is absolutely necessary." None of these representations were challenged before the motion judge. See Catando v. Sheraton Poste Inn, 249 N.J.Super. 253, 260 n. 1, 592 A.2d 294 (App.Div.1991), certif. denied, 127 N.J. 550, 606 A.2d 364 (1991).
We are satisfied that the record supports the motion judge's conclusion that both the amount of the settlement and the *482 reasons plaintiffs accepted the settlement were reasonable in light of Longworth and Bornstein. There is no basis to disturb those findings. Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J.Super. 223, 233, 725 A.2d 76 (App.Div.1999), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999).
AIC next argues that it has the right to litigate all remaining issues in the Superior Court rather than through arbitration since plaintiffs commenced proceedings in the Superior Court. AIC relies upon Zirger, supra, 144 N.J. 327, 676 A.2d 1065, Hansen v. Hansen, 339 N.J.Super. 128, 138, 770 A.2d 1278 (App.Div.2001), Scheer v. DiBenedetto, 346 N.J.Super. 550, 556, 788 A.2d 830 (App.Div.2002), and Wylie v. Hamilton, 365 N.J.Super. 153, 838 A.2d 514 (App.Div.2004). These decisions are distinguishable.
The Supreme Court's holding in Zirger, supra, bars an insurer from enforcing an arbitration clause in a standard UIM endorsement after a jury verdict has been rendered and the insurer had notice and an opportunity to intervene in the underlying action but declined to do so. 144 N.J. at 342, 676 A.2d 1065. Here, although AIC intervened in the underlying action, that matter will not proceed to trial in light of the settlement reached with the sole tortfeasor. Thus, as the Court in Zirger expressly held, "if the underlying tort claim does not result in an adjudication of damages, as is often the case, the arbitration clause in the UM/UIM policy will be given full force and effect." Id. at 343, 676 A.2d 1065.
Our decision in Hansen, supra, disapproved of piecemeal litigation. 339 N.J.Super. at 138, 770 A.2d 1278. The insurer appealed the trial court's refusal to grant its motion to join the defendant driver's uninsured motorist (UM) claim with the plaintiff's underlying claim against the driver. Id. at 133, 770 A.2d 1278. We concluded that since the plaintiff, a passenger, had dismissed her claim against the driver, arbitration was the appropriate forum to dispose of the remaining issues, including the driver's affirmative UM claim and the insurer's defense against that claim. Id. at 139, 770 A.2d 1278.
In Scheer, supra, the plaintiff settled with the underinsured tortfeasor and then proceeded to trial against the remaining tortfeasor, who was not underinsured. Scheer, supra, 346 N.J.Super. at 553, 788 A.2d 830. On the trial date, plaintiff and the remaining tortfeasor moved to informally bar the UIM insurer's continued participation in the litigation since it had not opposed plaintiff's settlement with the underinsured motorist. Ibid. We held the insurer's failure to oppose the settlement did not waive its right to attempt to reduce its liability by pursuing and establishing the remaining tortfeasor's contributory negligence in the accident. Id. at 557, 788 A.2d 830.
Finally, in Wylie, supra, the UIM insurer intervened in the action, participated in the mandatory, non-binding arbitration, signed the award, and consented to the settlement with the tortfeasor. Wylie, supra, 365 N.J.Super. at 156, 838 A.2d 514. The insurer did not serve a notice of rejection of the award and demand for a trial de novo pursuant to R. 4:21-6. Id. at 156, 838 A.2d 514. The plaintiff moved to confirm the award, which the insurer opposed by arguing it was not required to file for a trial de novo because it was not a defendant in the action. Ibid. In addition, the insurer argued that arbitration was the appropriate forum to resolve all remaining issues. Ibid. We held that the contract's arbitration clause was unenforceable and that the judgment entered as a result of the confirmation award was valid and fully enforceable given the insurer's *483 full participation in the arbitration. Id. at 162-63, 838 A.2d 514. Here, AIC never consented to the settlement, and the mandatory, non-binding arbitration had not yet occurred.
In summary, under the facts of this case, plaintiffs did not forfeit their right to pursue UIM benefits by accepting Revill's settlement offer; however, any UIM award must be reduced by Revill's full available policy limit. Since the settlement resolves the underlying tort action, all remaining issues of liability and damages are subject to arbitration in accordance with the arbitration clause contained in the policy.
Affirmed.
NOTES
[1] The reference to plaintiffs throughout this opinion refers to Evelyn Winner, widow and Executrix of the Estate of Irving Winner, as well as Roger Winner.
[2] AIC subsequently moved for dismissal of plaintiffs' complaint in its entirety; to strike the portion of the May 20, 2004, order allowing plaintiffs to proceed to arbitration in Agway's absence; and to stay the order requiring arbitration. The court granted all three applications.
[3] Plaintiffs conceded during oral argument that if the court granted the motion, any amount recovered under the UIM claim would be reduced by the full $50,000 limits of Revill's policy.
[4] When Roger Winner was deposed, he was questioned about statements attributed to him in newspaper articles following the accident that his father's vision had been failing.