LOUISE MAROS, PLAINTIFF-APPELLANT, v. TRANSAMERICA INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued March 8, 1978—Decided June 5, 1978.

*Mr. Thomas E. Napolitano* argued the cause for plaintiff-appellant (*Messrs. Napolitano & Napolitano,* attorneys).

*Mr. John S. Fitzpatrick* argued the cause for defendant-respondent (*Messrs. Haggerty & Donohue,* attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). At issue here is the correct construction of the statutory provision ("no fault") for payment by insurers of first-party "survivor benefits" to a survivor for loss of essential services consequent upon the death of a named insured who was providing such services as of the time of the accident. The pertinent factual background and statutory text may be found in the reported decisions of the Appellate Division and Law Division, 150 *N. J. Super.* 157; 143 *N. J. Super.* 307. The Law Division held that the survivor is entitled absolutely to payment in full of the maximum amount which could have been paid to the injured person had he lived — $4380; see *N. J. S. A.* 39:6A-4 c; 4 d. The Appellate Division reversed, holding that entitlement of the survivor to the essential services benefits was conditional upon the survivor actually arranging and paying for or incurring the expense of provision of

such services, up to the statutory maximum of $4380, and demonstrating those facts to the insurer periodically as payment or incurrence of the expense took place. We granted certification. 75 *N. J.* 526 (1977).

The named insured here, one Julius Maros, was a retired individual who died December 19, 1975 from injuries sustained in an automobile accident on December 15, 1975. He held a policy of automobile insurance issued by defendant. The trial court found that decedent had as of the time of the accident been rendering various household services such as partial construction of a carport, maintenance of a car, yard and house, shoveling snow, moving furniture, washing windows, caring for his surviving wife, the plaintiff, during illnesses, and driving her to appointments and on errands. No contention is here made that any of these services were not "essential services" within the statutory intent.

When, in February 1976, plaintiff sought from defendant payment of $4380 as maximum essential services benefits the latter refused in the absence of proof by plaintiff that she had in fact incurred the expense of providing for any of the services previously performed by the decedent.

It will be useful at this point to restate the pertinent statutory language. *N. J. S. A.* 39 :6A–4 provides in pertinent part:

Every automobile liability insurance policy * * * shall provide additional coverage * * * for the payment of benefits * * * to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident * * * "Additional coverage" means and includes:

\* \* \* \* \* \* \* \*

c. *Essential services benefits.*
Payment of essential services benefits to an injured person shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute essential services ordinarily performed by the injured person for himself, his family and members of the family residing in the household, subject to an amount or limit of $12.00 per day. Such benefits shall be payable during the life of the injured person and shall be subject to an amount or limit of $4,380.00, on

account of injury to any one person in any one accident.

d. *Survivor benefits.*

\* \* \* \* \* \* \* \*

In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.

There can be no dispute that insofar as subparagraph c. is concerned, the injured person can recover for essential service benefits only by way of reimbursement for actual expenses paid or incurred to a third person rendering the services provided by the injured person prior to his incapacitation. Had the intent been for a parallel requirement of actual payment or incurrence by the survivor of the expense of provision of such essential services by third persons, it would have been simple for the draftsmen of subparagraph d. to have so specified by language as free of doubt as that employed in writing subparagraph c. To the contrary, the legislators, in dealing with the entitlement of the survivor after death of the essential services provider, called for the payment to him (or her) of "the maximum amount of benefits which could have been paid [to]" the decedent, had he lived, under subparagraph c. To the extent thus indicated, there is no ambiguity whatever as to the payment called for. The "maximum amount" thereby specified is $4380. The section could have provided, but did not, that the survivor should be paid his expense, either paid or incurred, for such essential services *up to* the maximum of $4380.

█ The only basis for dispute concerning the intent of the statutory section involved, and that relied on by the Appellate Division for its determination herein, is the designation of the payee in subparagraph d.—*i. e.,* "the person incurring the expense of providing such essential services." It is clear to us that the foregoing language is not literally consistent with the previously quoted specification of the benefit to be paid as "the maximum amount of benefits which could have been

paid * * * under section 4c." to the decedent had he lived. This is, obviously, for the reason that the latter provision is descriptive of an absolute sum of money, whereas the inference from the specification of the designee is that the entitlement of the payee is conditional upon actual incurrence of an expense. In these circumstances we should seek for that reconciliation of the provisions which most probably comports with the statutory language and the purposes and objects of the Automobile Reparation Reform ("no fault") Act, *N. J. S. A.* 39:6A–1. *et seq.*

It would seem that the literal statutory specification in subparagraph d. of the amount of survivor benefits to be paid can be reconciled with the statutory designation in the same subparagraph of the person to be paid by considering the latter as intended solely to *identify* the payee and not to create conditions precedent to the status of the payee. In other words, "the person incurring the expense of providing such essential services," merely identifies the person presumptively arranging for the provision of the essential services previously provided by the decedent during his lifetime. This result is supported by the contrasting designation in subparagraph d. of the payees of survivor income continuation benefits as "the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer." Moreover, the peremptory tone of the provision for payment of "the maximum amount of benefits which could have been paid" the essential services provider during his lifetime, under section 4 c., is emphasized by consideration of the different language in the section when first adopted by *L.* 1972. *c.* 70, — *i. e.,* calling for payment of "the benefits that *would* have been paid to the injured person but for his death * * *." (emphasis added). The present language results from amendment of *N. J. S. A.* 39:6A–4 by *L.* 1972. *c.* 203. The inherent uncertainty as to what *"would* have been paid to the injured person but for his death" (emphasis

added) is thus seen to have been replaced by the certainty of "the maximum amount of benefits which [legally] *could* have been paid" etc. (emphasis added).

The result we here arrive at can be defended on the basis of at least one of the desiderata espoused by the proponents of the "no fault" legislation when first proposed. This is the prompt and efficient provision of benefits for all accident injury victims. See Reparation Reform for New Jersey Motorists, Report to the Governor and Legislature (1971) at p. 7. Elimination of the necessity of survivor-claimants' obtaining and submitting the numerous invoices representing small individual expense items for essential services and the auditing thereof by insurance claim departments may well have been deemed by the Legislature a salutary step toward the stated objective. Note the similar views in this regard of the trial court in this case. 143 *N. J. Super.* at 313.

Persuasive in these respects are also the views of the Appellate Division in *Muschette v. Gateway Ins. Co.,* 149 *N. J. Super.* 89 (App. Div. 1977), affirmed o.b. by the Court this day in *Muschette v. Gateway Insurance Co.,* 76 *N. J.* 560. Discussing *N. J. S. A.* 39:6A-4 in another connection, the Court there said:

The survivor benefits provided by § 4 are for income loss and loss of essential services resulting from the death of an injured person, in which case § 4 mandates that the *maximum* statutory amounts shall be paid. The obvious reason for awarding the maximum amounts is that injured persons who recover from their disabilities do so in varying periods with varying losses of income and essential services, whereas in case of death it is difficult or impossible to predict the amount of income and services which are lost to the surviving spouse or children or decedent's estate. Thus, the Legislature chose to provide as additional coverage fixed maximum sums in case of death of one who produced income and/or performed essential services. [149 *N. J. Super.* at 94 (emphasis in original)].

For all the reasons stated we conclude that the determination of the Appellate Division on the substantive

question of entitlement to survivor benefits for essential services should be reversed and that of the Law Division reinstated.

 An issue remains as to whether plaintiff should be awarded counsel fees on the appeal to the Appellate Division. Counsel fees are discretionary when action on an insurance policy is involved. *Felicetta v. Commercial Union Ins. Co.,* 117 *N. J. Super.* 524, 528 (App. Div. 1971), certif. den. 60 *N. J.* 141 (1972). Such fees may be allowed on appeal. *Corcoran v. Hartford Fire Ins. Co.,* 132 *N. J. Super.* 234, 244–45 (App. Div. 1975). A counsel fee was allowed plaintiff by the trial court and not disturbed on the appeal. The Appellate Division denied plaintiff's application for counsel fee for services in that court, apparently because of the position it took on the meritorious question. Plaintiff seeks a reversal of that action. In view of our conclusion on the merits, the matter of counsel fee in the Appellate Division is remanded for consideration by that court. *R.* 2:11–4. In that regard it should consider *inter alia* the debatability of the statutory construction issue as well as the comparatively small amount of the claim involved.

Reversed; remanded to the Appellate Division with directions to enter judgment reinstating the award made by the Law Division and to determine the motion for counsel fees for services in the Appellate Division.

SCHREIBER, J., dissenting. In my opinion the reasonable interpretation of *N. J. S. A.* 39:6A–4 requires an insurance company to pay only for essential services benefits which have been incurred. The essential services benefits provision must be viewed in the light of the statutory scheme for the payment of personal injury protection (PIP) benefits, *N. J. S. A.* 39:6A–4. That section reads as follows:

Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use

of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:

a. Medical expense benefits. Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. In the event of death, payment shall be made to the estate of the decedent.

b. Income continuation benefits. The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00, per week. Such sums shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200.00, on account of injury to any one person, in any one accident.

c. Essential services benefits. Payment of essential services benefits to an injured person shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute essential services performed by the injured person for himself, his family and members of the family residing in the household, subject to an amount or limit of $12.00 per day. Such benefits shall be payable during the life of the injured person and shall be subject to an amount or limit of $4,380.00, on account of injury to any one person in any one accident.

d. Survivor benefits. In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act,[1] the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b. shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.

In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.

e. Funeral expenses benefits. All reasonable funeral, burial and cremation expenses, subject to a maximum benefit of $1,000.00, on account of the death to any one person in any one accident shall be payable to decedent's estate.

[1]This section.

It may be seen that subsection (c) provides that payment of essential services benefits to an injured person shall be made in *reimbursement* of necessary and reasonable expenses *incurred* for such substitute essential services ordinarily performed by the injured person for his family and himself. Certainly no one would quarrel with the fact that this plain and unambiguous language contemplates an expenditure by the insured and then reimbursement by the insurance company of those expenditures.

The same scheme, involving reimbursement for expenditures incurred for essential services, is embraced under subsection (d), survivor benefits. This subsection provides for the effect on income continuation benefits under (b) and essential services benefits under (c) which may arise if the insured dies. In that event payments are then to be made to the person incurring the expense of providing such essential services. Subsection (d) must be read in the light of subsection (c). While the injured person lives, he is to be reimbursed for essential expenditures up to $12.00 per day and the same situation is to continue upon death until the aggregate maximum amount of $4380 is expended. That this was the understanding of the proponents of the legislation may be gathered from the comments of the Legal Counsel to the Legislature's Automobile Insurance Study Commission.[1] In discussing survivor essential services benefits, he wrote:

One must note carefully that the relationship of the decedent to the one incurring the expense of providing the substituted essential services is of no import. However, in order to qualify as an essential service it must be a service ordinarily performed by the

[1]The Commission was created by Joint Res. No. 4, *L.* 1970.

decedent for himself (or herself) for his or her family and members of the family residing in the household. Therefore, if a grandmother or aunt or an unrelated individual *incurs expense* in providing the substituted essential services, for example, for the children of the decedent who resided within the household, *such person incurring the expense will receive the essential services survivor benefits, in order to satisfy the payment of such expenses.* [*M. Iavicoli, No Fault & Comparative Negligence in New Jersey* at 73–74 (1973) (emphasis supplied)]

The Automobile Insurance Study Commission determined and concluded that the objectives of its recommended no fault legislation were reparations, minimization of claim costs, reasonable relationship between claims and premiums, and reduction of judicial workload. *Reparation Reform for New Jersey Motorists, Report to the Governor and Legislature* at 155 (1971). The first three objectives are related to compensating an injured victim for the "loss sustained," *id.* at 25. Counsel to the Commission, in discussing these aspects, wrote as follows:

It must be emphasized that the Act provides for reimbursement of expenditures; therefore, an actual expenditure is required. If the husband performs the injured wife's household services without an economic loss to the wife, no payment will result from essential services benefits. [*M. Iavicoli, supra* at 61]

The Appellate Division in this case aptly stated:

This construction of the enactment is most compatible with the overall purpose of the legislation which is, as its title implies, "reparation." [150 *N. J. Super.* at 160]

We abided by that construction recently when considering subsection (a) of *N. J. S. A.* 39:6A–4, which provides for payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. *Sanner v. Government Employees Ins. Co.,* 150 *N. J. Super.* 488 (App. Div. 1977), aff'd o.b. 75 *N. J.* 460 (1978). In that case we refused to sanction payment to a serviceman

for free medical treatment administered to him at a Veterans Administration Hospital. We adhered to the legislative purpose that recovery was not warranted "where liability for such expenses was not incurred or paid," 150 *N. J. Super.* at 492, and we could not "conceive [of] the public interest to be served by such a result." *Id.* at 493.

Support for the principle that the act contemplates reimbursement only of actual expenditures may also be found in the statutory provisions which prevent the recipient of PIP benefits from maintaining a suit for damages based on tort liability. *N. J. S. A.* 39:6A–8. The legislative intent was that the injured person recover his actual losses and not be able to obtain a double recovery. See *Cirelli v. Ohio Casualty Insurance Co.,* 72 *N. J.* 380, 387 (1977).

Indeed, viewing the statute in its entirety, one discerns a pattern of reimbursement, whether for medical expenses, funeral expenses, loss of income, or essential service benefits. The intent certainly was not to provide someone with a windfall, a result which conflicts with another major purpose of the no fault law — to decrease the cost of automobile liability insurance to the motoring public. *M. Iavicoli, supra* at 20. Reimbursement and reparations are the keys to the legislative intent.

I would affirm the judgment of the Appellate Division.

Justice CLIFFORD joins in this opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN and HANDLER and Judge CONFORD—5.

*For affirmance*—Justices CLIFFORD and SCHREIBER—2.