852 A.2d 227 (2004)
371 N.J. Super. 119
STATE FARM FIRE & CASUALTY COMPANY, Plaintiff-Respondent,
v.
Vincent CONNOLLY, Fred Caruso, Club X's, Defendants, and
Teague Hibbard, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 2003.
Decided July 9, 2004.
*228 Stone Mandia, attorneys for appellant (Richard B. Stone, of counsel and on the brief).
Campbell, Foley, Lee, Murphy and Cernigliaro, Asbury Park, attorneys for respondent (Stephen J. Foley, Jr., on the brief).
Before Judges CIANCIA, ALLEY and R.B. COLEMAN.
The opinion of the court was delivered by R.B. COLEMAN, J.A.D.
Defendant Teague Hibbard, who sued in the underlying civil action to recover compensatory and punitive damages for bodily injuries sustained as a result of an assault, is appealing from an order granting summary judgment to plaintiff State Farm Fire & Casualty Company (State Farm) in this declaratory judgment action brought by State Farm for a determination that it has no duty to defend or to indemnify defendant Vincent Connolly under the terms of a homeowner's insurance policy issued to Connolly's parents.[1] We *229 reverse and remand for further proceedings.
The policy in question extends liability insurance coverage to an insured for bodily injuries caused by an "occurrence." It defines an "occurrence" as "an accident... which results in bodily injury ... during the policy period." The policy excludes from coverage bodily injuries which are "either expected or intended by an insured" and those which result from the "willful and malicious act of an insured." The motion judge concluded that the injuries sustained by Hibbard were expected and intended by the insured, Connolly and, therefore, the policy exclusion applied to deny coverage.
Connolly was charged with second degree aggravated assault in connection with an August 21, 1999 attack on Teague Hibbard at Club XS, a night club in Seaside Heights. On July 23, 2001, the State amended that charge to third degree aggravated assault, causing "significant bodily injury under circumstances manifesting extreme indifference to the value of human life in a reckless manner." N.J.S.A. 2C:12-1b(7). Connolly pled guilty to that charge in exchange for which the prosecutor recommended and the judge imposed a probationary sentence. During the plea hearing on July 23, 2001, Connolly admitted that he was in the bathroom at Club XS where there was a fight involving Hibbard. He also provided the following response to his attorney's questioning:
Q. At that time, did you act in a reckless manner, causingwith extreme indifference to Mr. Hibbard, causing him significant bodily injury?
A. Yes.
The trial court found that this was an adequate factual basis for the plea which was accepted pursuant to R. 3:9-2. In accordance with the negotiated plea agreement, Connolly received a non-custodial sentence to five years probation.
Five months later in his December 20, 2001 deposition in the civil action brought by Hibbard, Connolly denied that he was present at Club XS on the night of the assault. When reminded of his admission at the plea hearing, he explained that he entered the guilty plea for two reasons one, economic and the other pragmatic:
I entered the plea for two reasons; one, it was an economic reason. I was already fifteen thousand into my lawyer. The second was if, in fact, somehow we took it to trial and I was guilty, there was a jail term of seven years [the presumptive term for a second degree offense]. So the prosecutor and my lawyer came up with if I took the plea there was going to be no jail time, it was going to be probation. But for those reasons I took the plea.
Connolly also provided certified answers to interrogatories in which he averred that he was not the individual who attacked and beat up Hibbard in the bathroom at Club XS. His answers to interrogatories 2 and 3 were as follows:
2. I have no knowledge of the occurrence set forth in the complaint, as I did not participate in any assault on the plaintiff.
* * *
3. I have no facts in connection with the alleged assault on the plaintiff, except *230 to state that if the plaintiff was assaulted, it was by some third person unknown to me.
The motion judge concluded that Connolly was estopped from taking a position contrary to that which he had taken at the plea hearing in the criminal matter. He ruled:
The bare assertions that he was not the assailant or the evidence creates an issue of fact as to who may have been the assailant are unpersuasive before this court. The record clearly imputes the assault upon him. He pleaded guilty before Judge Citta to an act placing himself squarely there. In addition thereto, the plaintiff himself clearly presents the defendant there. The only evidence to refute this inference is from Connolly's subsequent reversal of his original story in his interrogatory responses and deposition. Such evidence is not dispositive in the face of the overwhelming evidence indicating that he, in fact, was the assailant. I am satisfied he cannot take inconsistent positions before this court. He is collaterally estopped from so doing.
We disagree. Based upon his understanding that Connolly was estopped from denying that he assaulted Hibbard, the motion judge impermissibly decided issues of fact. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995).
Although Connolly's admission in the plea hearing certainly is admissible as bearing upon his credibility in the civil action, a jury should be permitted to consider his explanation in evaluating his credibility. N.J.R.E. 803(c)(22); N.J.R.E. 803(a); N.J.R.E. 803(b) and N.J.R.E. 613. Contrary to the motion judge's determination, our Supreme Court has held that collateral estoppel and other issue preclusionary doctrines do not preclude a person in a civil proceeding from taking a position inconsistent with his guilty plea.
In State, Dept. of Law and Pub. Safety v. Gonzalez, 142 N.J. 618, 623, 667 A.2d 684 (1995), the Court concluded that, "because of the strong public policy of maintaining integrity in the casino industry, a casino employee may not present evidence contradicting his or her convictions." Likening a casino employee license revocation hearing to an attorney disciplinary proceeding, the Court reached the same conclusion based on the doctrine of judicial estoppel, a doctrine that "`bar[s] a party to a legal proceeding from arguing a position inconsistent with one previously asserted.'" Id. at 631-32, 667 A.2d 684, (citing N.M. v. J.G., 255 N.J.Super. 423, 429, 605 A.2d 709 (App.Div.1992); and Levin v. Robinson, Wayne & LaSala, 246 N.J.Super. 167, 178-79, 586 A.2d 1348 (Law Div.1990)). "Judicial estoppel, however, is an `extraordinary remedy' that courts invoke `only when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" State v. Jenkins, 178 N.J. 347, 359, 840 A.2d 242 (2004) (quoting Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J.Super. 596, 608, 760 A.2d 794 (App.Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996))). Despite its refusal to permit the defendant in State, Dept. of Law and Pub. Safety v. Gonzalez, supra, to deny his prior representations as he sought to retain his casino license, the Court recognized that in other contexts, a collateral attack of a guilty plea is permissible. It stated:
It is beyond dispute that in a trial involving a cause of action based on tort or contract, a party's guilty plea may be used as affirmative, substantive evidence against that party. Eaton v. Eaton, 119 *231 N.J. 628, 643, 575 A.2d 858 (1990); Stoelting v. Hauck, 32 N.J. 87, 106, 159 A.2d 385 (1960). In such civil proceedings, the guilty plea is introduced into evidence as an admission, but it does not constitute conclusive proof of the facts underlying the offense. Eaton, supra, 119 N.J. at 644, 575 A.2d 858. In that context, "the party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission." Ibid. (citations omitted). Consequently, the doctrine of issue preclusion does not prevent the pleading party in the trial of a tort or contract claim from contesting the admitted facts.
[State, Dept. of Law and Pub. Safety, supra, 142 N.J. at 629, 667 A.2d 684.]
In addition to the doctrine of judicial estoppel, it is also apparent that collateral estoppel does not apply. See, e.g., Garden State Fire & Casualty Co. v. Keefe, 172 N.J.Super. at 53, 60-61, 410 A.2d 718 (App.Div.), certif. denied, 84 N.J. 389, 420 A.2d 317 (1980), observing that "a plea-entry proceeding is not and does not purport to constitute a full and fair litigation of the issues. To the contrary, it represents a defendant's option to forego such litigation and usually for reasons having little or nothing to do with the nature of the issues themselves."
We do not perceive that a miscarriage of justice will result from Connolly's attempt in this declaratory judgment action to repudiate his admission at the plea hearing. He has the onus of the criminal conviction and the administration of civil justice is not prejudiced by his seeking a determination of coverage.
Moreover, where, as here, an innocent third party, such as Hibbard, who is seeking compensation for injuries received as a result of the alleged conduct which is the subject of the guilty plea, we have shown a reluctance to treat the guilty plea as preclusive. See, e.g., Prudential Property and Casualty Ins. Co. v. Kollar, 243 N.J.Super. 150, 578 A.2d 1238 (App.Div. 1990) (holding that defendant's plea of guilty to aggravated arson not conclusive on insurer's attempt to disclaim coverage in subsequent subrogation action brought on behalf of victim); and Garden State Fire and Casualty Co. v. Keefe, supra, 172 N.J.Super. at 55, 410 A.2d 718 (holding that defendant's plea of guilty to atrocious assault and battery not conclusive on insurer's attempt to disclaim coverage in subsequent negligence actions brought by victim of shooting). See also Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970) (declining to accord preclusionary effect to the insured's conviction of atrocious assault and battery to establish the insured's intent to harm the victim and recognizing that the victim had an interest in the liability policy sufficient to be heard on questions of coverage and that he should not be estopped by a judgment entered in a proceeding begun after he was injured if he was not a party to it).
Because he concluded that the guilty plea could not be collaterally attacked, the motion judge failed to recognize that material issues of fact actually existed as to whether Connolly was or was not at Club XS at the time of the attack upon Hibbard, and if he was there, whether he committed acts which would come within the exclusionary provisions of the policy. Based upon our review of the record, the evidence against Connolly is not as overwhelming as the motion judge obviously believed. In his own answers to interrogatories, Hibbard stated that he "went to the men's room and while standing at the urinal, I was struck from behind. The next thing I realized was when I woke up on the steps located in the alley." Also, the police reports included in the record *232 make it fairly clear that Hibbard did not see who or what struck him.
Connolly was not immediately arrested and he was not arrested in Club XS. Rather, he was arrested after he had allegedly fled to avoid apprehension when friends of Hibbard supposedly identified him as the assailant. According to one police report, an unknown witness stated that four males repeatedly kicked Hibbard about the head and body while he was unconscious on the floor. Statements given by two of Hibbard's friends to the Seaside Heights Police Department were included in the record on the motion, however, the record does not include affidavits or certifications of these individuals. Neither of their statements was recorded on the date of the event. The statement of Erick Hnyda was given on January 7, 2000, approximately four and one-half months after the incident. The statement of Brian Marsh was given even later, on May 12, 2000.
Hnyda disclosed that he was in the bathroom waiting in line when "in the corner of my eye, we see somebody getting punched by at least, at least three different people and it went on for at least a couple of minutes until the kid crawled up into a ball on the floor and they kept beating him and then we, we all realized that it was ... enough." Hnyda indicated that after the police arrived, he and his friends went through the club and then went out front where they saw two people across the street who ran when they were pointed out. His friends gave chase and he believed the individuals were apprehended by the police. He felt he could identify one of the actors [Connolly] based upon photographs shown to him.
According to his statement, Brian Marsh was on his way to the bathroom and saw a bunch of people running, trying to get out and trying to get in at the same time. He saw a bunch of kids in there "waltzing around whatever but the kid that was on the ground was being kicked by ... the kid I picked out on the picture [Connolly]." He observed the kicker leave as the bouncers came in. He went outside to get the police and to get an ambulance and said "... as we went in front of the club, towards the end of the night, we seen (sic) the kids just walking across the street, all shady and somebody pointed at them and they started running, and so a bunch of people started running after them." It was his understanding that at least one of the assailants was apprehended after he hopped over a fence. He identified a photograph of Connolly as one of the kickers in the bathroom.
The motion judge rejected the request by Hibbard's counsel for a plenary hearing to determine the coverage issue. He reasoned,
... if in fact, his story is true that he wasn't in that bathroom and did not commit the assault, there is no coverage for you here. They will not pay a dime, this carrier, because he wasn't there, did nothing wrong, played no part, could not have been negligent. If, on the hand, the other side of the coin, he was there and kicked him in the head, there's a closed head injury, and I find that under the Voorhees case and ... under the cases before the court, the Harleysville case and the like, that the act is so closely related to the injury that I don't need a factual injury inquiry, you don't get coverage there either.
Contrary to the judge's reasoning, if Connolly's current story that he was not at Club XS is true, he is entitled to a defense under the policy and to exoneration by the trier of fact. On the other hand, if he was there and assaulted Hibbard, the judge was correcthe would not be entitled to be indemnified.
*233 In Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992) and it companion case, SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 607 A.2d 1266 (1992), the Supreme Court reiterated that the duty to defend is generally determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the insurer must defend the suit. Voorhees, supra, 128 N.J. at 173, 607 A.2d 1255; SL Industries, Inc., supra, at 197, 607 A.2d 1266. When multiple alternative causes of action are stated, the duty to defend will continue until covered claims are eliminated. In this case, the complaint alleges causes of action against Connolly for negligence and recklessness as well as for willfully, intentionally and wantonly committing an assault and battery.
The exclusionary provision of the policy in SL Industries was the same as that involved in this case. It defined an "occurrence" as an "accident ... which results in bodily injury ... neither expected nor intended from the standpoint of the insured." In that case, the Supreme Court agreed with our emphasis on the insured's intent to cause injury rather that on his intent to commit the act that resulted in the injury. In other words,
[a]ssuming the wrongdoer subjectively intends or expects to cause some sort of injury, that intent will generally preclude coverage. If there is evidence that the extent of the injuries was improbable, however, then the court must inquire as to whether the insured subjectively intended or expected to cause that injury. Lacking that intent, the injury was "accidental" and coverage will be provided.
[SL Industries, supra, 128 N.J. at 212, 607 A.2d 1266.]
In this case, the motion judge concluded that if Connolly did kick Hibbard, that act would have had an inherent probability of causing the degree of injury actually inflicted. Consequently, a factual inquiry into the actual intent of the actor to cause that injury was not necessary. We agree with that proposition; however, we disagree that the threshold determination that Connolly was the actor is conclusively established by the guilty plea. That is not a determination which can be made as a matter of law on the record which currently exists.
We reverse and remand for further proceedings.
NOTES
[1] State Farm's initial complaint was only against Vincent Connolly. On November 26, 2001, it amended its complaint to name as defendants all remaining parties to the underlying tort action, plaintiff Teague Hibbard, defendant Fred Caruso and defendant Club XS (incorrectly identified in the caption as "Club X's"). A voluntary Stipulation of Dismissal with prejudice was filed as to defendant Fred Caruso before State Farm's motion for summary judgment was filed. Connolly opposed State Farm's motion, but Teague Hibbard is the only party who appealed from the grant of summary judgment in favor of State Farm.