**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4567-14T4

LORRAINE BRYANT,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

JOHN H. GOVEN,

    Defendant,

and

AMERIPRISE AUTO & HOME
INSURANCE, AMERIPRISE
INSURANCE COMPANY and IDS
CASUALTY PROPERTY INSURANCE
COMPANY,

    Defendants-Respondents/
    Cross-Appellants.

_____

Argued April 6, 2017 — Decided May 2, 2017

Before Judges Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No. L-0359-
14.

Christopher J. Portee argued the cause for
appellant/cross-respondent (Epstein Ostrove,
LLC, attorneys; Carol Matula, of counsel and

on the briefs; Daniel N. Epstein, on the briefs).

Michael R. Tucker, Jr., argued the cause for respondents/cross-appellants (Bruno, Gerbino & Soriano, LLP, attorneys; Mr. Tucker and Matthew J. Smith, on the briefs.

PER CURIAM

On September 13, 2011, plaintiff Lorraine Bryant sustained bodily injuries and incurred medical expenses when her host driver, defendant John H. Goven, lost control of his truck and slammed into a pole. Plaintiff filed suit against Goven seeking damages; in the same complaint, she sued defendant insurance companies,[1] seeking personal injury protection (PIP) benefits and uninsured motorist (UM) coverage under her mother's automobile insurance policy.

Plaintiff appeals from an April 24, 2015 Law Division order denying her motion for summary judgment against defendants and dismissing her claims against defendants as judicially estopped, based upon her failure to list the claims in a previously filed bankruptcy petition. Defendants appeal from the same order.

---

[1] For ease of reference, we refer to defendant insurance companies (Ameriprise Auto & Home Insurance, Ameriprise Insurance Company, and IDS Property Casualty Insurance Company, all related entities) jointly as defendants. Because defendant John H. Goven defaulted, our reference to defendants excludes him unless otherwise noted.

A-4567-14T4

Plaintiff argues the motion court should not have dismissed her complaint because of her failure to disclose her claims during her concurrent bankruptcy proceeding. She further argues defendants owe her benefits under her mother's insurance policy because (1) she lived with her mother at the time of her accident, (2) her mother did not have to list her on the policy to insure her, and (3) she had a reasonable excuse for not notifying defendants of her automobile accident until twenty months afterwards. Defendants argue plaintiff does not have standing to bring her claims because the claims belong to the Chapter 7 Trustee (the Trustee) of plaintiff's bankruptcy estate. Alternatively, defendants argue we should vacate the judgment plaintiff obtained against Goven, as plaintiff failed to provide them with notice of the trial court's proof hearing after Goven defaulted.

We agree with plaintiff's contention the motion court prematurely dismissed her complaint. The court should have notified the Trustee of the case and allowed the Trustee to decide whether to pursue plaintiff's claims. We therefore vacate the dismissal order because the motion court did not provide notice to the Trustee, who owns the claim on behalf of plaintiff's creditors. We reject defendants' argument we should vacate the judgment plaintiff obtained against Goven based upon plaintiff's failure to provide them with notice of the trial court's proof

hearing. Because plaintiff never notified defendants of the hearing, they are not in privity with Goven, and they may relitigate plaintiff's damages in any future UM proceeding.

I.

On October 26, 2010, defendants issued an automobile insurance policy to plaintiff's mother, who resided in Elizabeth. The policy insured her 1998 Cadillac Deville, and included $75,000 of PIP coverage and $100,000 of UM bodily injury coverage per person. Plaintiff's mother renewed the policy twice, maintaining the policy through April 26, 2012. The policies listed plaintiff's mother as the only driver.

The policy stated defendants would "pay personal injury protection benefits to or for an <u>insured</u> who sustains <u>bodily injury</u>. The <u>bodily injury</u> must be caused by an accident arising out of the ownership, maintenance or use, including loading or unloading, of a <u>private passenger car</u> as an automobile."[2] The policy defined "insured" as the "<u>named insured</u> or any any <u>relative</u> who sustains <u>bodily injury</u> while[] [<u>o</u>]<u>ccupying</u> or using an auto." The policy defined "relative" as "a person related to [<u>the policyholder</u>] by blood, marriage or adoption who is a resident in [<u>the policyholder's</u>] household."

---

[2] The underlined terms were bolded in the original policy.

The policy also stated defendants would "pay damages for bodily injury . . . caused by an accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle . . . arising out of the ownership, maintenance or use of that vehicle." In this context, the policy defined "insured" to include the policyholder's "relative if a resident of [the policyholder's] household."

The policy also required:

> In the event of an accident, written notice must be given to us as soon as reasonably practicable but in no event more than [thirty] days after the date of accident, unless the eligible injured person submits written proof providing clear and reasonable justification for failure to comply with such time limitation.

At her deposition, plaintiff described the accident. Although she wore a seatbelt, plaintiff remembered her "body was just going around" in the pickup truck, and she then lost consciousness. She awoke outside of the truck with her son above her, calling her name. The police report stated Goven's vehicle crashed into the back of a stopped car and then hit a pole. The police report also listed the address of plaintiff's mother as plaintiff's address.

An ambulance took plaintiff to the hospital. Plaintiff's ambulance bill and emergency room (ER) records listed her mother's address as her own. The ER records stated plaintiff sustained a

5

lumbar sprain, shoulder contusion, and cervical strain. Plaintiff subsequently received treatment from other doctors. One doctor gave her injections into her lower back to decrease her pain. The doctor also gave her injections into her shoulder, which had a tear.

At the time of her deposition in October 2014, plaintiff continued to have pain in her upper back, lower back, down her left leg, and into her foot. The following month, a doctor wrote to plaintiff's counsel, stating plaintiff had "impressive disc herniations at almost every level." The doctor stated the herniations were "traumatic" and were "all permanent in nature and caused by the motor vehicle accident of September 13, 2011."

Goven had a "basic" automobile insurance policy, which provided no liability insurance coverage and only a $10,000 per person medical expense extension. Plaintiff received the $10,000 under Goven's policy. Plaintiff had no automobile or health insurance in her own name. Because plaintiff's mother had been sick and was not driving her car, plaintiff assumed she had dropped her auto insurance by the time of the subject accident.

On June 7, 2013, plaintiff filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of New Jersey. Plaintiff did not list any claim relating to the subject accident in her disclosure of personal property.

Plaintiff first met with her current counsel on June 21, 2013. She was unsure whether she "would be able [to] file suit at that date." She did not "realize" she "needed to disclose this suit in" her bankruptcy petition. Four days later, plaintiff's counsel sent the police report of the subject accident to defendants.

Defendants took a recorded statement from plaintiff on July 16, 2013; she explained she did not report the accident within thirty days because she did not think her mother had auto insurance at the time. On August 2, 2013, plaintiff submitted an application for PIP benefits, listing her mother's address as her address. Because the statute of limitations was about to run, plaintiff filed suit against defendants, including Goven, seeking insurance benefits under her mother's auto insurance policy and damages against Goven.

On September 20, 2013, the Bankruptcy Court granted plaintiff a discharge under 11 U.S.C.A. § 727. Five days later, the Bankruptcy Court entered a final decree, discharging the Trustee and closing plaintiff's bankruptcy case.

In February 2015, plaintiff filed a motion for a "declaratory judgment" establishing her entitlement to insurance benefits under her mother's automobile insurance policy. Defendants opposed the motion and filed a cross-motion for summary judgment. On April

24, 2015, following oral argument, the court denied plaintiff's motion and granted defendants' cross-motion. The court explained its denial of plaintiff's motion:

> Plaintiff claims that she resided with her [m]other for [fifty-four] years. However, the only proofs offered by plaintiff to establish this fact is her own deposition testimony, and one gas bill addressed to a Lorraine Drisco (phonetic). Plaintiff claims that she used the name Drisco because it was her son's [f]ather's name, a party's own testimony in a single utility bill with the first name as plaintiff, but a different last name, is certainly not to this [c]ourt, sufficient proof to establish the material fact that she resided with her [m]other at the time of the subject accident.

The court also explained its grant of defendants' cross-motion:

> In this case, clearly, [plaintiff] did file and had her debts discharged . . . without revealing . . . the potential right to claim under this litigation. Here, defendant claims that plaintiff is judicially estopped from arguing she's entitled to benefits, whether PIP or UIM under her [m]other's policy of insurance. Defendant argues that plaintiff had debts in connection with . . . the litigation that were discharged as a result of her bankruptcy.
>
> To the extent that all of her debts were discharged, it's hard to argue with that at this point. I do find . . . judicial estoppel, without considering the other arguments of defendant[s] . . . . [D]efendant[s] [are] entitled [to] summary judgment in this matter.

The court did not dismiss plaintiff's claims against Goven.

Even though the April 24, 2015 order was clearly interlocutory, plaintiff filed a notice of appeal on June 5, 2015, and defendants filed their cross-appeal on June 29, 2015. Notwithstanding plaintiff's previous bankruptcy filing, and with no notice to the Trustee or counsel for defendants, on July 13, 2015, the trial court held a proof hearing to determine plaintiff's damages, and entered a $400,000 default judgment against Goven.

## II.

We initially review certain procedures applicable to plaintiff's Chapter 7 bankruptcy filing. When a debtor files a bankruptcy petition, the debtor formally requests the relief afforded by the Bankruptcy Code. The petition not only initiates a bankruptcy action, it also acts as an order for relief of the debtor, as provided by the case under which the petition was submitted. The debtor becomes obligated to provide full disclosure of his or her financial affairs, 11 U.S.C.A. § 521, in exchange for the Bankruptcy Code's protections, such as the automatic stay provisions of 11 U.S.C.A. § 362(a).

The purpose of a Chapter 7 case, sometimes called a liquidation, is to allow an individual debtor to retain certain exempt assets, 11 U.S.C.A. § 522, surrender all assets in excess of those exemptions to the appointed Chapter 7 trustee, 11 U.S.C.A. § 704, and discharge all unsecured debts, 11 U.S.C.A. § 727(a),

in order to make an unencumbered fresh start, relieved from the immediate financial pressure that drove the debtor to file bankruptcy. Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654, 660, 112 L. Ed. 2d 755, 765 (1991).

The commencement of a bankruptcy case also creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). "The scope of this [Code section] is broad. It includes all kinds of property, including tangible or intangible property, causes of action . . ., and all other forms of property . . . ." Senate Report No. 95-989. All property comes into the debtor's estate, and in a Chapter 7 case, the trustee succeeds to the debtor's interest in the property as fiduciary to the debtor's creditors.

The debtor's petition includes schedules listing all assets and liabilities. 11 U.S.C.A. § 521(a)(1)(B)(i). The debtor has an affirmative duty to provide complete disclosure. Ibid.; see Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416-17 (3d Cir.) (noting § 521 outlines a non-exhaustive list of the debtor's duties in a bankruptcy case), cert. denied, 488 U.S. 967, 109 S. Ct. 495, 102 L. Ed. 2d 532 (1988). Schedule B requires disclosure of all personal property "of whatever kind," in which the debtor has a whole or partial interest. The schedule lists

various categories of assets and requires the debtor to describe the nature and location of the property, whether it is owned with another, and the value of the debtor's interest. Specifically, item 21 requests disclosure of "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." The debtor who has an interest in an unliquidated personal injury claim must disclose that claim. Among the property a debtor may retain as exempt is "a payment, not to exceed $23,675, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor." 11 U.S.C.A. § 522(d)(11)(D). According to 28 U.S.C.A. § 157(b)(5),

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Once the debtor files his or her petition, the Chapter 7 panel trustee conducts a meeting of creditors. 11 U.S.C.A. § 341(a). A "debtor shall appear and submit to examination under oath" conducted by the trustee at the meeting of creditors. 11 U.S.C.A. § 343. Any creditor may examine a debtor at the § 341(a) meeting. Ibid.

11

When a Chapter 7 debtor fulfills all duties described by the Code, see 11 U.S.C.A. § 521, and otherwise provides full disclosure, the debtor is eligible to retain all scheduled exempt property, 11 U.S.C.A. § 523, and any other property of the estate, see 11 U.S.C.A. § 541(a), abandoned or not administered by the trustee. 11 U.S.C.A. § 554(a) and (c). Moreover, a debtor is entitled to a discharge of the unsecured debts. 11 U.S.C.A. 727(a).

## A. Standing

"The issue of standing presents a legal question subject to our de novo review." Courier-Post Newspaper v. Cty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010). Our Supreme Court defines standing broadly and does not restrict New Jersey courts to the rigid "case or controversy" requirement under Article III, § 2 of the United States Constitution. Salorio v. Glaser, 82 N.J. 482, 490 (1980). The New Jersey Constitution "contains no analogous provision limiting the subject-matter jurisdiction of the Superior Court." Id. at 491 (citing N.J. Const. art. VI, § 3, ¶ 2). New Jersey courts remain "free to fashion [our] own law of standing consistent with notions of substantial justice and sound judicial administration." Ibid. The Court has therefore found "it unnecessary to consider whether federal standing

12

requirements have been met" when deciding questions of standing in New Jersey courts.  Ibid.

New Jersey courts "have traditionally taken a generous view of standing in most contexts."  In re N.J. State Contract A71188 for Light Duty Automotive Parts, 422 N.J. Super. 275, 289 (App. Div. 2011).

> Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness.  In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits."
>
> [Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-08 (1971).]

"A financial interest in the outcome ordinarily is sufficient to confer standing."  EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 340 (App. Div. 2015).  "Ordinarily, a litigant may not claim standing to assert the rights of a third party.  However, standing to assert the rights of third parties is appropriate if the litigant can show sufficient personal stake and adverseness so that the [c]ourt is not asked to render an

advisory opinion." <u>Jersey Shore Med. Ctr.-Fitkin Hosp. v. Estate of Baum</u>, 84 <u>N.J.</u> 137, 144 (1980).

Defendants argue plaintiff lacks standing because her claims became part of her bankruptcy estate after she filed her bankruptcy petition. They cite federal cases in which federal courts have held the plaintiffs lacked standing to bring claims that they neglected to disclose in their bankruptcy proceedings because the trustee had "exclusive standing to assert those claims." <u>DiMaio Family Pizza & Luncheonette v. Charter Oak Fire Ins. Co.</u>, 448 <u>F.</u>3d 460, 463 (1st Cir. 2006). Finding these cases neither controlling nor persuasive, we conclude plaintiff has standing to bring her claims.

New Jersey courts are "free to fashion [our] own law of standing consistent with notions of substantial justice and sound judicial administration." <u>Glaser</u>, <u>supra</u>, 82 <u>N.J.</u> at 491. Although defendants are correct that plaintiff's claims are part of her bankruptcy estate, plaintiff may retain up to $23,675 "on account of personal bodily injury." 11 <u>U.S.C.A.</u> § 522(d)(11)(D). Plaintiff may also retain any property that the trustee abandons or declines to administer. 11 <u>U.S.C.A.</u> § 554(a) and (c). These rights give her a "financial interest" in her claims, <u>EnviroFinance</u>, <u>supra</u>, 440 <u>N.J. Super.</u> at 340, and a "sufficient personal stake and adverseness so that [the trial court was] not

asked to render an advisory opinion." Estate of Baum, supra, 84 N.J. at 144.

## B. Judicial Estoppel

We next review the trial court's application of the judicial estoppel doctrine. "The doctrine of judicial estoppel is well entrenched in New Jersey's jurisprudence." Newell v. Hudson, 376 N.J. Super. 29, 38 (App. Div. 2005); see also Koppel v. Olaf Realty Corp., 56 N.J. Super. 109, 121 (Ch. Div. 1959), aff'd, 62 N.J. Super. 103 (App. Div. 1960).

"It is 'an equitable doctrine precluding a party from asserting a position in a case that contradicts or is inconsistent with a position previously asserted by the party in the case or a related legal proceeding.'" Newell, supra, 376 N.J. Super. at 38 (quoting Tamburelli Props. v. Cresskill, 308 N.J. Super. 326, 335 (App. Div. 1998)); McCurrie v. Town of Kearney, 174 N.J. 523, 533-34 (2002). "The purpose of the judicial estoppel doctrine is to protect 'the integrity of the judicial process.'" Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)), certif. denied, 167 N.J. 88 (2001). Essentially, if a litigant's position in one matter is true, then the contrary position in the subsequent matter cannot be. Thus, the doctrine is not intended to bar every inconsistency, but

15

"[r]ather . . . designed to prevent litigants from 'playing fast and loose with the courts.'" Cummings, supra, 295 N.J. Super. at 387 (citing Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)).

"Bad faith" "is not a requirement in New Jersey." Atlantic City v. Cal. Ave. Ventures, LLC, 23 N.J. Tax 62, 68-69 (App. Div. 2006) (citing Kimball Int'l, Inc., supra, 334 N.J. Super. at 608 n.4; Bray v. Cape May City Zoning Bd. of Adjustment, 378 N.J. Super. 160, 166-67 (App. Div. 2005)). Moreover, "[s]ince the purpose of the doctrine of judicial estoppel is to protect the integrity of the tribunal before which a party seeks to contest facts which he has previously [and successfully] admitted . . ., it is that tribunal which should determine whether or not to invoke this doctrine." State v. Gonzalez, 273 N.J. Super. 239, 260 (App. Div. 1994) (citation omitted), aff'd, 142 N.J. 618 (1995). "Thus, the forum court applies its own law regarding the applicability of judicial estoppel." Cal. Ave. Ventures, LLC, supra, 23 N.J. Tax at 68.

The application of judicial estoppel, particularly to bar a plaintiff's cause of action, is an extraordinary remedy and its application is subject to the court's sound discretion. See Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108 (3d Cir. 1999) (citing McNemar v. Disney Store, Inc., 91 F.3d 610, 613 (3d

Cir. 1996) (Appellate courts "review the application of judicial estoppel under an 'abuse of discretion' standard"), cert. denied, 519 U.S. 1115, 117 S. Ct. 958, 136 L. Ed. 2d 845 (1997)). As an equitable doctrine, judicial estoppel "should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Kimball Int'l, Inc., supra, 334 N.J. Super. at 608 (quoting Ryan Operations, supra, 81 F.3d at 365); see also State Farm Fire & Cas. Co. v. Connolly, 371 N.J. Super. 119, 125 (App. Div. 2004). A misapplication of a trial court's discretion results when "its ruling is founded on an error of law or a misapplication of law to the facts." Montrose v. Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 780 (3d Cir. 2001) (citing In re O'Brien, 188 F.3d 116, 122 (3d Cir. 1999)).

Plaintiff argues the trial court should not have dismissed her complaint as judicially estopped because "the bankruptcy can be reopened under 11 U.S.C.A. § 350(b) should [she] recover benefits in any trial." "Rather than remand with instructions for the trustee to review the case . . . , [plaintiff] requests that her attorney be permitted to prosecute [her] claims, and if there is a recovery, the bankruptcy trustee can be notified to reopen the case." We agree that the trial court should not have completely dismissed plaintiff's claims, but we decline to allow

17

plaintiff to pursue them without notifying the Trustee of her bankruptcy estate.

If plaintiff had properly disclosed her claims during her bankruptcy, the Trustee would have reviewed them and decided whether to pursue them. The trial court should have provided the Trustee the opportunity to review plaintiff's claims before determining whether plaintiff's failure to disclose her claims renders her judicially estopped from pursuing them herself. A bankruptcy trustee may reopen a case at any time to administer assets. 11 U.S.C.A. § 350(b). As necessary, the trustee may examine the debtor or other evidence to assess the prospects of recovery for benefit of the creditors. If the trustee chooses to assume the presentation of the claims as pled, the trial court should schedule a trial. If the Trustee prevails, defendants should pay the Trustee on behalf of the estate, because the approval of any distribution of the monies rests with the bankruptcy court.

Judicial estoppel applies when a party is "asserting a position in a case that contradicts or is inconsistent with a position previously asserted by the party in the case or a related legal proceeding." Newell, supra, 376 N.J. Super. at 38 (quoting Tamburelli Props., supra, 308 N.J. Super. at 335). The Trustee did not address plaintiff's accident-related claims in the

bankruptcy court, so the Trustee may maintain these claims before New Jersey courts without contradiction. We therefore conclude the trial court mistakenly exercised its discretion when it dismissed plaintiff's claims against defendants without first affording the Trustee the opportunity to review and possibly pursue these claims. If the Trustee declines to pursue plaintiff's claims, the trial court may reconsider defendants' motion for dismissal in accordance with Kimball Int'l, Inc., supra, 334 N.J. Super. at 608 (recognizing "judicial estoppel is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice'" (quoting Ryan Operations, supra, 81 F.3d at 365)).

### C. Summary Judgment

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must view the facts in a light most favorable to the non-moving party. Polzo v. Cnty. of Essex, 209 N.J. 51, 56-57 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). The factfinder must resolve the slightest doubt as to an issue of material fact, Saldana v. DiMedio, 275

19

N.J. Super. 488, 494 (App. Div. 1994), or even simply an issue of credibility, D'Amato by McPherson v. D'Amato, 305 N.J. Super. 109, 114-15 (App. Div. 1997). These questions consequently preclude a court from granting judgment as a matter of law. "[S]ummary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy." Saldana, supra, 275 N.J. Super. at 495.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Thus, we must first determine whether any genuine issue of material fact exists, and, if not, evaluate whether the trial court's ruling was correct as a matter of law. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010).

"[A]n insured bears the burden of establishing that a claim is within the basic policy terms." Cobra Prods., Inc. v. Fed. Ins. Co., 317 N.J. Super. 392, 401 (1998) (citing Diamond Shamrock Chems. v. Aetna, 258 N.J. Super. 167, 216 (App. Div. 1992), certif. denied, 134 N.J. 481 (1993)), certif. denied, 160 N.J. 89 (1999). "The insurer has the burden of establishing application of an exclusion." Ibid. (citing Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18 (1984)). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should

not engage in a strained construction to support the imposition of liability.'" Flomerfelt v. Cardiello, 202 N.J. 432, 442 (2010) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).

"In determining whether there is a common household, [New Jersey] courts often consider whether the insured and the relative seeking coverage share a 'substantially integrated family relationship.'" Gibson v. Callaghan, 158 N.J. 662, 673 (1999). "That two people reside under the same roof is neither necessary nor sufficient for a finding that those people share a 'household.'" Id. at 672. This court has previously held a son remained in his parents' household because he maintained a bedroom in their house and regularly spent two nights a week there, even though he "lived primarily" in an apartment in New York City. Id. at 673 (citing Arents v. Gen. Accident Ins. Co., 280 N.J. Super. 423, 425-26 (App. Div. 1995)). This court also "considered the fact that the insured kept clothing at his parents' house, that he had a car garaged, registered, and insured at that address, and that he made household repairs." Ibid. (citing Arents, supra, 280 N.J. Super. at 425-26).

Plaintiff argues the trial court should have granted her summary judgment because (1) she lived in her mother's household, (2) her mother did not need to list her as a driver on her policy in order for plaintiff to have coverage under the policy, and (3)

she notified defendants within a reasonable time.  We conclude the record presents a genuine issue of material fact as to whether plaintiff lived in her mother's home.  We refrain from deciding plaintiff's last two contentions because the trial court did not reach them.

During discovery and the hearing on summary judgment, plaintiff produced a single gas bill, addressed to "Loraine Drisco," for her mother's home.  The bill showed a "Turn On Date" of January 26, 1996, a "Last Payment Date" of October 5, 2010, and a "Reinstate Date" of January 20, 2012.  In her answer to defendants' interrogatories, plaintiff stated her middle name was "Drisco."  At the hearing, her counsel stated "Drisco" was the name of her son's father.  Plaintiff did not provide any other documentation that she lived with her mother.  Plaintiff did not produce evidence establishing she lived with her mother "so clearly as to leave no room for controversy."  Saldana, supra, 275 N.J. Super. at 495.  We therefore conclude the trial court properly denied plaintiff's motion for summary judgment.

### D. Attorney's Fees

Rule 4:42-9(a)(6) permits the award of attorney's fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."  See, e.g., Maros v. Transamerica Ins. Co., 76 N.J. 572, 579 (1978).  The rule is intended "to

22

discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." Sears Mortg. Corp. v. Rose, 134 N.J. 326, 356 (1993) (quoting Gaur. Ins, v. Saltman, 217 N.J. Super. 604, 610 (App. Div. 1987)).  In other words, an award for attorney's fees and costs in an action to enforce insurance benefits is supported by "[t]he theory . . . that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." Liberty Vill. Assocs. v. W. Am. Ins. Co., 308 N.J. Super. 393, 406 (App. Div.) (citing Sears Mortg., supra, 134 N.J. at 356), certif. denied, 154 N.J. 609 (1998).

Plaintiff argues she is entitled to attorney's fees.  Because plaintiff has not yet established herself as a "successful claimant," we decline to award her attorney's fees at this point of the litigation.  See, e.g., Maros, supra, 76 N.J. at 579.

E. Notice of Proof Hearing

"[P]laintiffs are obligated to provide notice to their UM/UIM carrier of the institution of suit against the tortfeasor." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 340-41 (1996).  When plaintiffs provide this notice, they establish the carrier's

privity with the tortfeasor for the purposes of issue and claim preclusion, preventing redundant litigation.  Id. at 342.  When plaintiffs do not provide this notice, the carrier is not in privity with the tortfeasor for the purposes of issue and claim preclusion, so the carrier may relitigate the issue of damages. Vaccaro v. Pa. Nat'l Mut. Cas. Ins. Co., 349 N.J. Super. 133, 143 (App. Div.) ("To bind the UM/UIM carrier, there must be notice to the carrier and an adversarial proceeding that determines damages."), certif. denied, 174 N.J. 40 (2002).

Defendants argue plaintiff should have given them notice of the hearing and allowed them to oppose her proofs because they step "into Mr. Goven's shoes for the purposes" of plaintiff's UM action.  Defendants are clearly mistaken.  Because plaintiff never notified defendants of the hearing, they are not in privity with Goven and may relitigate his damages in any future UM action.  See Vaccaro, supra, 349 N.J. Super. at 143.  We therefore decline to vacate plaintiff's default judgment against Goven.

We do, however, vacate the trial court's order of dismissal and remand the matter for additional proceedings consistent with our opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4567-14T4